EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José A. Ramos Rosado, et als.<br><br>    Demandantes-Peticionarios<br><br>vs.<br><br>Wal-Mart Stores, Inc. de Isabela, et als.<br><br>    Demandados-Recurridos | Certiorari<br><br>2005 TSPR 123<br><br>165 DPR ____ |

Número del Caso: CC-2005-286

Fecha: 31 de agosto de 2005

Tribunal de Circuito de Apelaciones:

            Región Judicial de Aguadilla

Juez Ponente:

            Hon. Carlos Soler Aquino

Abogado de la Parte Recurrida:

            Lcdo. Pedro A. Barceló Lugo

Abogado de la Parte Peticionaria:

            Lcdo. Luis R. Cuebas Irizarry

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José A. Ramos Rosado,
et als.

    Demandantes-Peticionarios

       vs.               CC-2005-286      CERTIORARI

Wal-Mart Stores, Inc. de
Isabela, et als.

    Demandados-Recurridos

SENTENCIA
(Regla 50)

San Juan, Puerto Rico, a 31 de agosto de 2005

El Sr. José Ramos Rosado presentó ante el Tribunal de Primera Instancia, Sala Superior de Aguadilla, una demanda de daños y perjuicios en contra de Wal-Mart Stores Inc. En la misma se alegó que mientras el señor Ramos Rosado se encontraba en las facilidades de la tienda Wal-Mart de Isabela, específicamente en el área de piezas y accesorios de automóviles, resbaló en un líquido que estaba regado por el piso, cayendo hacia atrás e impactando el suelo con el lado izquierdo de su cuerpo.

Luego de varios incidentes procesales, y tras escuchar las declaraciones de los

testigos presentados por ambas partes, el 2 de junio de 2004 el Tribunal de Primera Instancia declaró con lugar la demanda presentada al concluir que "la negligencia del demandado fue la causa que provocó el accidente que da margen a la demanda en este caso".[1]

Al explicar su dictamen el referido foro prestó especial atención a la relación existente entre el "área en donde ocurr[ió] el resbalón con el anaquel donde se encontraban los artículos de encerado y pulido de autos." De este modo, concluyó que "en el pasillo donde ocurrió el accidente el día de los hechos había una condición que puede catalogarse como peligrosa . . . ." y que la demandada "debió tomar precauciones para evitar la ocurrencia de un accidente como el que nos ocupa en este caso, ya que es totalmente previsible el derrame de líquido o material resbaloso de los artículos que se encontraban en el anaquel inmediatamente contiguo al pasillo donde ocurrió el accidente."

Amparado en tales argumentos, el foro de instancia señaló que la alegada negligencia "consistió en que [Wal-Mart] no tomó las medidas de precaución necesarias para evitar que ocurriera[,] como ocurrió[,] que en área del pasillo inmediato al anaquel de productos y artículos relacionados con el pulido y encerado de los autos

---

[1] Véase Sentencia del Tribunal de Primera Instancia de 2 de junio de 2004 a la pág. 8.

existiera un líquido resbaloso, pegajoso e incoloro . . . y que para que no ocurriera tal caída no se tomaron las precauciones de seguridad para limpiar el área del pasillo afectada." Finalmente expresó que "[l]a tienda Wal Mart debió anticipar que dicha condición peligrosa (los productos para encerado de automóviles que estaban en los anaqueles justamente al lado del pasillo donde ocurrieron los hechos) podían ocasionar daños, por lo que debió adoptar medidas de seguridad para evitarlo." (Énfasis suplido.)

Inconforme con el referido dictamen, Wal-Mart acudió al Tribunal de Apelaciones alegando que incidió el foro de instancia al analizar y apreciar la prueba, adjudicar credibilidad y determinar negligencia. El foro apelativo intermedio, luego de analizar la transcripción del juicio en su fondo, revocó la determinación del foro primario al concluir que "el Tribunal de Primera Instancia incurrió en error manifiesto en su apreciación de la prueba, ya que la demandante no probó su caso conforme a derecho."[2] Determinó que en el presente caso "[e]l demandante no pudo probar, mediante preponderancia de la prueba, que la demandada actuó negligentemente y que ésta fue la causa próxima y

---

[2] Como es sabido, la apreciación de prueba que hace el Tribunal de Primera Instancia debe ser respetada y los tribunales apelativos no intervendrán con ella a menos que se revele que actuó movido por pasión, perjuicio, parcialidad o error manifiesto. Belk v. Martínez, 146 D.P.R. 215, 232 (1998).

eficiente de los daños alegados." <u>A esos efectos, señaló, entre otras cosas, que "no pudo establecer[se] el tiempo en que la alegada sustancia estuvo en el piso y si era o debió haber sido del conocimiento de la demandada."</u>[3]

Inconformes, los demandantes acudieron --vía *certiorari*-- ante este Tribunal alegando que erró el Tribunal de Apelaciones al revocar la sentencia dictada por el Tribunal de Instancia. Resolvemos el recurso radicado sin ulterior trámite y al amparo de las disposiciones de la Regla 50 de nuestro Reglamento. Confirmamos; esto es, se sostiene la determinación del foro apelativo intermedio a los efectos de que no se probó la negligencia de la parte demandada. Veamos por qué.

I

En <u>innumerables</u> ocasiones este Tribunal ha resuelto que una empresa que opera un establecimiento abierto al público con el propósito de llevar a cabo operaciones comerciales para su propio beneficio tiene el deber de mantener dicho establecimiento en condiciones tales de seguridad que sus

---

[3] Por otra parte, el referido foro apelativo expresó que "[e]l hecho escueto de que el demandante resbaló y sufrió una caída mientras caminaba por las facilidades de la demandada es insuficiente para imponerle responsabilidad por la ocurrencia del accidente." <u>Asimismo, indicó que mediante la prueba presentada Wal-Mart estableció que en la empresa existe una política de prevención de accidentes y protección de los invitados y que los demandantes, quienes tienen el peso de la prueba, no pudieron demostrar que el día de los hechos esa política no fue implementada.</u>

clientes no sufran daño alguno.[4] Sin embargo, al establecer dicha normativa este Tribunal <u>nunca</u> ha pretendido convertir al dueño de un establecimiento comercial en asegurador absoluto de la seguridad de sus visitantes <u>ni</u> imponerle a éste una responsabilidad absoluta frente a cualquier daño sufrido por sus clientes. <u>Colón González</u> v. <u>Kmart</u>, 2001 T.S.P.R. 95; <u>Goose</u> v. <u>Hilton Hotels</u>, 79 D.P.R. 523 (1956).

Así lo establecimos en <u>Goose</u> v. <u>Hilton Hotels</u>, ante, a la pág. 527, al señalar que el dueño de un establecimiento "no es un asegurador de la seguridad de los clientes del negocio, y su deber sólo se extiende al ejercicio del cuidado razonable para su protección." Del mismo modo, en <u>Colón González</u> v. <u>Kmart</u>, ante, fuimos <u>enfáticos</u> al señalar que la norma establecida "de ningún modo significa que el dueño de un establecimiento comercial asume una responsabilidad absoluta frente a cualquier daño sufrido por sus clientes."

A tono con lo anterior, este Tribunal ha resuelto que los propietarios de establecimientos comerciales son responsables ante sus clientes por los daños ocasionados a causa de aquellas condiciones peligrosas <u>que sean conocidas por éstos o cuando su conocimiento les sea imputable.</u>

---

[4] <u>Colón González</u> v. <u>Kmart</u>, 2001 T.S.P.R. 95; <u>Cotto</u> v. <u>C.M. Ins. Co.</u>, 116 D.P.R. 644, 650 (1985); <u>Aponte Betancourt</u> v. <u>Meléndez</u>, 87 D.P.R. 652 (1963); <u>Weber</u> v. <u>Mejías</u>, 85 D.P.R. 76 (1962); <u>Santaella Negrón</u> v. <u>Licari</u>, 83 D.P.R. 887 (1961); <u>Goose</u> v. <u>Hilton Hotels</u>, 79 D.P.R. 523 (1956); <u>Gutiérrez</u> v. <u>Bahr</u>, 78 D.P.R. 473 (1955).

Véase: <u>Cotto</u> v. <u>C.M. Ins. Co.</u>, ante, a la pág. 650.[5] Sobre este particular, hemos expresado que en estos casos el demandante tiene el peso de la prueba para demostrar que el dueño del establecimiento no "ejerció el debido cuidado para que el local fuese seguro." *Ibid*. Véase, además: <u>Soc. Gananciales</u> v. <u>G. Padín Co. Inc.</u>, ante, a la pág. 104. "En palabras más sencillas, la parte demandante tiene la obligación de poner al tribunal en condiciones de poder hacer una determinación clara y específica sobre negligencia mediante la presentación de prueba a esos efectos." <u>Cotto</u> v. <u>C.M. Ins. Co.</u>, ante a la pág. 651.

Como vemos, para imponer responsabilidad en los casos de accidentes en establecimientos comerciales <u>los demandantes tienen que probar --y los tribunales tienen que determinar--, en primer lugar, si existía una condición peligrosa y, en segundo lugar, si la existencia de tal condición era del conocimiento de la parte demandada o si podía imputársele a éste tal conocimiento</u>. Amparado en esta normativa fue que el foro apelativo intermedio <u>correctamente</u> entendió que los demandantes fallaron en probar su caso conforme a derecho.

---

[5] Esto es, el demandante tiene que probar que el daño sufrido se debió a la existencia de una condición peligrosa, que esa condición fue la que con mayor probabilidad ocasionó el daño y que la misma era --o debió ser-- conocida por el demandado. <u>Colón González</u> v. <u>Kmart</u>, ante; véase, además: <u>Admor. F.S.E.</u> v. <u>Almacén Román Rosa</u>, res. el 30 de junio de 2000, 2000 T.S.P.R. 111.

II

Un análisis <u>responsable y desapasionado</u> de la transcripción de evidencia que consta en el expediente es suficiente para percatarse de que en el presente caso los demandantes fallaron en probar el segundo de los elementos antes mencionado, requisito indispensable para imponer responsabilidad en este tipo de caso. Esto es, los demandantes <u>no</u> probaron que Wal-Mart tenía o debió tener conocimiento del alegado derrame que ocasionó el accidente aquí en controversia. Tampoco demostraron que la alegada sustancia estuvo en el suelo por un periodo de tiempo irrazonable o excesivo o que la demandada fallara en implementar la política de prevención establecida en sus tiendas. Veamos en detalle algunos de los testimonios presentados ante el foro de instancia:

En primer lugar, testificó el demandante José Ramos. Éste declaró que mientras visitaba la tienda Wal-Mart de Isabela resbaló cuando fue a tomar uno de los artículos ubicado en el área de piezas y accesorios de autos. <u>No pudo precisar en qué resbaló</u>, pero una vez en el suelo se percató <u>que tenía la ropa mojada</u>. Su esposa, la Sra. Méndez, declaró que no estaba con su esposo cuando ocurrió el accidente, pero que cuando llegó al área en cuestión lo encontró tirado en el suelo y con su ropa húmeda. <u>Tampoco pudo identificar la sustancia que estaba en el suelo y sólo pudo declarar que se trataba de un líquido "sucio"</u>.

De particular pertinencia a la controversia ante nos es el testimonio del <u>testigo de la parte demandante</u>, Sr. Héctor Negrón; cliente que se encontraba en la tienda Wal-Mart de Isabela el día de los hechos. El señor Negrón declaró que antes del accidente aquí en controversia pasó por el área de piezas y accesorios de automóviles y también resbaló en el líquido incoloro que había en el piso. Indicó que continúo caminando por los pasillos para buscar a un empleado de la tienda cuando escuchó "un fuerte ruido de objetos que se habían caído." Más adelante, declaró: ". . . yo no pude hablar para notificar la situación. Cuando surge el evento . . . se pidió que alguien avisara a los empleados de lo que estaba pasando." A preguntas del abogado de la parte demandante el testigo añadió que luego de esto "llegaron tres empleados." <u>Como se desprende, claramente, del testimonio de este testigo, Wal-Mart no tuvo oportunidad de tomar acción alguna con el propósito de eliminar la condición"</u> existente antes de que ocurriera el <u>accidente</u>.

Por parte de Wal-Mart testificó el Sr. George Mena, quien a la fecha de su testimonio se desempeñaba como Gerente de Operaciones de la tienda de Isabela y <u>llevaba once (11) años laborando para la referida empresa</u>. Su testimonio giró <u>en torno a la política de la empresa respecto a la seguridad de sus clientes y la prevención de accidentes</u>. Declaró que en las tiendas existen varios programas de prevención de accidentes, entre los que

mencionó las "rondas preventivas", el "zone defense" y el "safety sweep".

En cuanto a las rondas preventivas explicó que cada hora los gerenciales recorren la tienda para identificar cualquier situación que pueda provocar accidentes y corregirla inmediatamente. En cuanto al "safety sweep" declaró que se trata de otra de las medidas implementadas en las tiendas donde cada quince (15) minutos los asociados caminan por los pasillos o departamentos que le han sido asignados para identificar cualquier objeto o derrame en el piso. Asimismo, declaró que el "zone defense" es una ronda que se realiza cada dos horas donde los empleados colocan en sus áreas cualquier objeto o mercancía que esté fuera de lugar. Como resulta obvio, respecto a medidas de seguridad en evitación de accidentes, no se le puede exigir más a un patrono.

Por otra parte, el señor Mena explicó que al reclutar a un asociado se le adiestra sobre los programas de seguridad establecidos por Wal-Mart y se le suministra un examen como parte del proceso de reclutamiento. Asimismo, declaró que las tiendas cuentan con dos asociados de mantenimiento por cada turno, los cuales están continuamente barriendo el piso, recogiendo basura, limpiando derrames y verificando cualquier situación que pueda provocar accidentes. Además, señaló que en caso de derrames cada uno de los asociados tiene instrucciones de mantenerse en el área afectada para evitar que algún

cliente pueda accidentarse y pedir ayuda a otro asociado para limpiar el mismo.

La señora Áurea Pérez declaró que es empleada de Wal-Mart desde hace ocho (8) años y que para la fecha del accidente trabajaba en el área de telas que estaba inmediatamente al lado del pasillo de productos de automóviles. Ésta declaró que fue informada por una cliente sobre el accidente y que acudió inmediatamente al lugar, siendo la primera persona en llegar allí. Además, corroboró el testimonio del señor Mena en cuanto a las medidas de seguridad que se llevan a cabo en la tienda de Isabela.

III

Como señaláramos anteriormente, un análisis detenido de la totalidad de la prueba vertida ante el foro de instancia, nos lleva inexorablemente a concluir que en el presente caso el referido foro no tuvo ante sí prueba suficiente para imponerle responsabilidad a la parte demandada. Esto es, la prueba desfilada ante el foro de instancia demuestra claramente que los demandantes fallaron en demostrar que Wal-Mart tenía, o pudo haber tenido, conocimiento sobre la existencia del alegado derrame de líquido que ocasionó el accidente de Ramos Rosado.

Es un hecho incontrovertido que el señor Negrón no llegó a notificar a Wal-Mart sobre la sustancia derramada, por lo que definitivamente no puede argumentarse que la demandada advino en conocimiento de tal situación. Tampoco

puede argumentarse que Wal-Mart debió tener --o pudo haber tenido-- conocimiento sobre el alegado derrame, pues los demandados no demostraron que el líquido haya estado derramado en el suelo por un periodo de tiempo irrazonablemente largo. Ello es así, pues la prueba ofrecida --y no rebatida-- por la parte demandada fue a los efectos de que la ronda preventiva se hacía cada quince (15) minutos y los demandantes no probaron que dicho periodo --el cual es más que razonable-- hubiese transcurrido sin que efectivamente se hubiese efectuado la mencionada ronda.[6]

Reiteradamente hemos señalado que únicamente se le impondrá responsabilidad a un demandado en esta clase de situaciones cuando, mediante la presentación de prueba, se ponga al tribunal en condiciones de poder hacer una determinación clara y específica sobre negligencia. Véase: Cotto v. C. M. Ins. Co., ante, a la pág. 651. Somos del criterio que en el presente caso la parte demandante incumplió con su obligación de presentar prueba que pusiera

---

[6] A diferencia de la minoría, discrepamos totalmente del razonamiento que hace el foro de instancia al descartar el testimonio del Sr. George Mena --quien llevaba 11 años laborando para las tiendas Wal-Mart-- bajo el único fundamento de que a la fecha del accidente éste no trabajaba ni estaba en la tienda de Isabela. A esos efectos, conviene resaltar que el testimonio del señor Mena estaba dirigido a establecer --como empleado gerencial de muchos años-- cuál era la política de la empresa respecto a la prevención de accidentes y que su testimonio fue corroborado por la señora Pérez, quien no sólo se encontraba presente en la tienda el día de los hechos, sino que, además, fue la primera persona en llegar al lugar del accidente.

al tribunal de instancia en condiciones de así poderlo determinar.

Si a ello le añadimos, la prueba —no rebatida— presentada por la parte demandada sobre las medidas de seguridad, en evitación de esta clase de accidentes, que existían en la tienda en controversia, resulta palpablemente claro que el tribunal de instancia incurrió en error manifiesto al declarar con lugar la demanda radicada en el presente caso. Belk v. Martínez, ante.

Procede, en consecuencia, expedir el auto de certiorari radicado y dictar Sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Apelaciones.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió Opinión disidente a la cual se une la Juez Asociada señora Fiol Matta.


                                    Aida Ileana Oquendo Graulau
                                    Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José A. Ramos Rosado, Etc.

   Demandantes-Peticionarios


              vs.                    CC-2005-286
Certiorari


Wal-Mart Stores, Inc. de
Isabela,Etc.

   Demandados-Recurrida


Opinión Disidente emitida por el Juez Asociados señor FUSTER BERLINGERI, a la cual se une la Juez Asociada señora FIOL MATTA.


              San Juan, Puerto Rico, a 31 de agosto de 2005.


          Conviene precisar los **hechos probados** del caso de autos, según fueron determinados por el foro de instancia que recibió y evaluó la prueba. Ello es particularmente menester aquí porque la mayoría del Tribunal en su sentencia **no los pondera todos debidamente** y, por ende, llega a un resultado erróneo e injusto, que favorece sin razón a la poderosa parte culposa en este caso. Veamos.

          El 5 de febrero de 1998, aproximadamente a las 8:15 p.m., José Ramos Rosado y su esposa se encontraban en las facilidades de la tienda Wal-Mart de Isabela, haciendo unas compras. Ramos Rosado llegó al área de piezas y accesorios de autos, resbaló sobre un líquido que estaba regado en el

piso, y se cayó, recibiendo golpes serios y hematomas en la cabeza, el cuello y la espalda. De allí fue trasladado a la Sala de Emergencia del Hospital de Isabela, donde le ofrecieron primeros auxilios y lo refirieron al Hospital Regional de Aguadilla. Posteriormente, viendo que no tenía mejoraría alguna, comenzó tratamiento con un neurólogo, quien le diagnosticó trauma severo a la cabeza, cefalea post traumática, espasmo cervico dorsal lumbar de moderado a severo post traumático, múltiples traumas al cuerpo, enfermedad temprana de disco L4 y L5 post traumática, recibiendo como tratamiento analgésicos orales, anti-inflamatorios, relajantes musculares, terapia física y recomendación de no levantar peso mayor de quince libras por su condición disco lumbar.

Por razón de los daños referidos, Ramos Rosado, su esposa y la sociedad de gananciales integrada por ambos, presentaron la correspondiente demanda de daños y perjuicios contra Wal-Mart.

Luego de varios incidentes procesales que no es menester narrar aquí, el foro de instancia celebró una vista en la que Ramos Rosado declaró:

(1)     **que al llegar al área de artículos de encerado y pulido de autos de la tienda en cuestión, resbaló sin poder sostener el equilibrio**;

(2)     **que no vio el líquido en el piso por el cual resbaló por haber sido uno pegajoso e incoloro, de lo que se percató luego de la caída**;

**(3) que no recibió atención alguna por parte de la gerencia o empleados de la tienda; y**

(4) **que en ningún momento vio a persona alguna limpiando el área**.

Su esposa declaró que al llegar al área del accidente su esposo estaba temblando, quejándose de dolor de cuerpo y cabeza, **que no vio en el área del accidente rótulo o advertencia alguna de peligro en el lugar, y que el líquido regado en el piso donde resbaló su esposo era incoloro**. También testificó Héctor Negrón, empleado de la Defensa Civil, quien también visitaba el establecimiento como cliente la noche del incidente. **Éste declaró que unos diez minutos antes del accidente de Ramos Rosado, pasó por el mismo pasillo, resbaló también allí, y que el líquido en el piso era incoloro. Añadió que entonces se fue a buscar un empleado de la tienda para indicarle lo que le había sucedido, para que limpiara el área, pero en ese momento se cayó el peticionario**. Por parte de Wal-Mart, sólo testificaron el Gerente de Operaciones Mena, y Aúrea Pérez, una cajera y primer empleado del establecimiento que llegó al área el día del accidente. Ambos declararon sobre unas supuestas medidas de seguridad que tenía Wal-Mart, en particular, el "safety sweep". Señalaron que el "safety sweep" consistía de una medida de seguridad en virtud de la cual empleados de la tienda caminaban sus pasillos cada quince minutos y removían todo lo que estaba en el piso, como ganchos, basura, y cualquier otro tipo de objeto que pudiera causar accidentes o

substancias derramadas. En adición, Pérez señaló que al llegar al área del accidente no vio ninguna substancia en el área donde se había caído Ramos Rosado. El Gerente de Operaciones admitió también que no trabajó ni estuvo presente en la tienda el día del accidente.

Atendidos los planteamientos de ambas partes, el 2 de junio de 2004, el Tribunal de Primera Instancia dictó una sentencia y declaró ha lugar la demanda en cuestión. Resolvió que la demandada había incurrido en negligencia y venía obligada a responder por los daños. En particular, determinó como hechos probados:

(1) **que al momento del accidente en cuestión el área de la tienda Wal-Mart, donde Ramos Rosado había resbalado, el piso estaba húmedo con una substancia pegajosa e incoloro;**

(2) **que antes de ocurrir el accidente de Ramos Rosado, el Sr. Héctor Negrón había estado presente en la misma área y observó que había un líquido regado en el piso, por lo cual acudió a buscar ayuda para que el personal de Wal-Mart limpiara el área afectada;**

(3) **que al momento del accidente no habían en el área en cuestión rótulo o advertencia alguna sobre su condición peligrosa o que impidiese el libre discurrir de los clientes por dicha área;**

(4) **que Wal-Mart no había presentado prueba que las medidas de seguridad que tenía por**

**reglamento para evitar accidentes como éste fueran puestas en vigor el día de la caída de Ramos Rosado, ni de los cuidados tomados para brindar seguridad al cliente;**

(5) **que en el área donde resbaló Ramos Rosado se encontraban los artículos de encerado y pulido de autos y que el contenido de dichos productos era de naturaleza resbalosa, por lo que el lugar presentaba un grado de peligrosidad que requería una advertencia a los clientes, precaución que Wal-Mart debió haber anticipado, pero no había tomado;**

(6) **que Ramos Rosado no había resbalado por su propia torpeza.**

**Debe enfatizarse que el Tribunal de Instancia consignó expresamente en su Sentencia que le concedía "total credibilidad" a los testimonios de Ramos Rosado, de su esposa y del señor Negrón.**

Inconforme con el dictamen del foro de instancia, el 6 de agosto de 2004, Wal-Mart presentó un recurso de apelación ante el Tribunal de Apelaciones. Alegó, en síntesis, que había errado el tribunal de instancia al analizar y apreciar la prueba, al adjudicar credibilidad a la parte demandante, y al determinar que había mediado negligencia.

Atendido el recurso de apelación, el 29 de diciembre de 2004, el Tribunal de Apelaciones emitió una sentencia y revocó el dictamen del foro de instancia. Concluyó que el

hecho escueto de que Ramos Rosado resbaló y sufrió una caída mientras caminaba por las facilidades de la demandada era insuficiente para imponerle responsabilidad a Wal-Mart por la ocurrencia de dicho accidente. Resolvió que Ramos Rosado no logró probar que la demandada actuó negligentemente y que ésta fue la causa próxima y eficiente de los alegados daños.

De la sentencia del Tribunal de Apelaciones acudieron ante nos Ramos Rosado, su esposa y la sociedad legal de gananciales integrada por ambos, mediante el presente recurso de *certiorari*. Hicieron el siguiente señalamiento de error:

> Erró el Tribunal de Apelaciones al revocar la sentencia dictada por el Tribunal Superior de Aguadilla en este caso.

II

Es norma bien conocida en nuestra jurisdicción que cuando una empresa mantiene abierto al público un establecimiento, con el objeto de llevar a cabo operaciones comerciales para su propio beneficio, **tiene el deber de mantener dicho establecimiento en condiciones de seguridad tales que sus clientes no sufran daño alguno**. Cotto v. C.M. Ins. Co., 116 D.P.R. 644 (1985).

Lo anterior no significa que el dueño de un establecimiento comercial asume una responsabilidad absoluta frente a cualquier daño sufrido por sus clientes. Para que se le imponga responsabilidad, el demandante tiene que probar que el dueño no ejerció el debido cuidado para que el local fuese seguro. Colón González v. Tienda K-Mart, res. el 26 de

junio de 2001, 154 D.P.R. ___, 2001 TSPR 95, 2001 JTS 100. En los casos de accidentes en establecimientos comerciales, hemos impuesto responsabilidad siempre que el demandante pruebe que existían condiciones peligrosas dentro de las tiendas correspondientes, "las cuales eran de conocimiento de los propietarios **o su conocimiento podía imputárseles a estos**". Cotto v. C.M. Ins. Co., *supra*. En otras palabras, el demandante tiene que probar que su daño se debió a la existencia de una condición peligrosa, y que esa condición fue la que con mayor probabilidad ocasionó el daño, y que la misma era conocida por el demandado, **o que debió conocerla**. Admor. F.S.E. v. Almacén Román Rosa, 151 D.P.R. 711 (2000).

Así mismo, es norma bien establecida en nuestro ordenamiento jurídico que los tribunales no alterarán las determinaciones de hecho del foro *a quo* a menos que se demuestre que no hay evidencia suficiente en los autos para sostenerlas, o cuando se revele que actuó movido por pasión, prejuicio o parcialidad. Es el tribunal de instancia quien está en mejores condiciones de observar la actitud de los testigos, su forma de declarar, sus gestos, y en general su conducta al prestar declaración. Castro Boyrie v. Meléndez Lind, 82 D.P.R. 573 (1961). **La apreciación de la prueba que hace el foro de instancia merece nuestra deferencia en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto**. Véase, Rodríguez Oyola v. Machado Díaz, 136 D.P.R. 250 (1994). Las determinaciones del Tribunal de Primera Instancia no deben descartarse en forma arbitraria ni tampoco ser sustituidas

por el criterio del tribunal apelativo, a menos que de la evidencia desfilada surja que no existe base suficiente que sustente tales determinaciones. <u>Pueblo v. Maisonave Rodríguez</u>, 129 D.P.R. 49 (1999).


III

Al aplicar el derecho antes expuesto al caso de autos, forzoso resulta concluir que erró el tribunal apelativo al revocar la decisión del tribunal de instancia, y que comete un grave error también la mayoría de este Tribunal al confirmar el errado dictamen del foro apelativo. La mayoría aquí no ha ponderado bien todos los hechos del caso, por lo que su dictamen resulta ser erróneo e injustamente parcializado a favor de la parte negligente en este caso.

Examinados cuidadosamente los testimonios vertidos en la vista, **sobre todo aquellos a los cuales el foro de instancia le dio credibilidad**, no puede llegarse a ninguna otra conclusión razonable que no sea la de que los peticionarios demostraron que en el área donde ocurrió el accidente **existía una condición peligrosa que debió ser conocida por Wal-Mart**. Si bien es cierto que Wal-Mart no podía ser un asegurador de todo posible peligro en sus facilidades, también es cierto que incurrió en una omisión negligente que ocasionó el accidente a Ramos Rosado.

El área en que ocurrió el accidente era una que contenía diversos artículos para automóviles, entre ellos, artículos para lavar y encerar autos. Es conocido que tales artículos contienen ingredientes que al entrar en contacto con el suelo

ocasionan que esa área esté resbalosa. La noche del incidente, Ramos Rosado era un cliente que se dirigió a una góndola de la tienda de Wal-Mart para obtener un producto, que no vio una sustancia incolora que estaba en el suelo, y sin poder evitarlo, resbaló sufriendo una caída. Ya otro cliente, el señor Negrón, que había pasado por el mismo lugar por lo menos diez minutos antes del accidente de Ramos Rosado, también resbaló allí, percatándose de la existencia de un líquido resbaloso en el suelo, e inmediatamente salió a buscar a un empleado, porque en ese momento no vio ninguno en dicha área. Tampoco apareció empleado alguno para atender a Ramos Rosado inmediatamente después de su caída. **Es evidente de todo lo anterior que desde antes de que Negrón resbalara hasta después de la caída de Ramos Rosado, el piso del lugar en cuestión estuvo resbaloso, mojado por un líquido incoloro, causando dos accidentes, sin que hubiera pasado un empleado de Wal-Mart por el lugar, para limpiar el piso**. Todo ese período de tiempo, **obviamente de mucho más que los diez minutos transcurridos entre el resbalón de Negrón y la caída de Ramos Rosado**, el piso estuvo resbaloso según los testimonios que le merecieron credibilidad al foro sentenciador. Dicho foro resolvió expresamente que no hubo prueba de que la noche del accidente Wal-Mart llevara a cabo las supuestas medidas de seguridad de Wal-Mart como el "safety sweep", que supuestamente todas las tiendas de Wal-Mart practicaban. Llama la atención particularmente el hecho de que frente a los tres testimonios claros y contundentes de la parte demandante, Wal-Mart no presentó evidencia creíble

alguna sobre las medidas que en efecto tomó durante la noche del accidente. No presentó prueba alguna de si sus empleados correspondientes dieron las supuestas rondas cada quince minutos que debían dar y al pasar por el lugar no vieron nada en el suelo. Establecido por el demandante una situación de clara negligencia que ocasionó dos caídas durante un lapso de tiempo de mucho más de diez minutos, es muy significativo que Wal-Mart no ofreciera el testimonio de los empleados que estaban supuestamente asignados a supervisar el área del accidente esa noche, quienes hubieran podido declarar sobre las referidas rondas, para poder saber si, en efecto, tomaron las medidas de seguridad necesarias. Wal-Mart se limitó simplemente a presentar evidencia sobre unas supuestas medidas de seguridad que alegadamente existían en ese establecimiento, que se suponía que sus empleados tomarían, pero no presentó prueba alguna sobre las medidas tomadas en efecto esa noche.

Es por todo lo anterior que fueron evidentemente correctas las determinaciones del foro de instancia, que determinó que Wal-Mart incumplió su deber jurídico de proveer un lugar seguro para que el peticionario realizara sus compras. **Es claro que ocurrió un daño, la caída de Ramos Rosado, ocasionada por una sustancia en el suelo la cual era resbalosa. Es claro también que, al momento del peticionario caminar por ese pasillo, dicha substancia llevaba más de diez minutos tirada en el suelo sin haber sido recogida por los empleados de Wal-Mart. Finalmente, es claro, además, que Wal-Mart no había tomado las medidas de seguridad necesarias para**

**evitar que la sustancia estuviera derramada mucho tiempo, al punto de que otra persona antes del incidente también había resbalado**. Wal-Mart creó una condición peligrosa, al existir la sustancia, precisamente en un área destinada para el tránsito de clientes, área con artículos que contenían ingredientes resbalosos, área sin ningún aviso al respecto, y área, que conforme a la prueba, no había sido limpiada y atendida adecuadamente por los empleados. Esa condición peligrosa **debió ser conocida por Wal-Mart, quien no actuó diligentemente para evitar el daño previsible**.

Por todo lo anterior, no hay razón alguna para dejar sin efecto la decisión del tribunal de instancia, quien observó el comportamiento de los testigos y escuchó sus declaraciones. La prueba presentada por los peticionarios fue robusta y deja establecida la relación causal del daño alegado y la omisión negligente por parte del demandado. La prueba aportada por Wal-Mart no rebatió las alegaciones de los peticionarios en cuanto a su negligente omisión en tomar medidas de seguridad ante un daño previsible.

Es sencillamente **incomprensible** como la mayoría llega a otro resultado; como puede dejar de considerar **todos** los hechos del caso en su prejuiciado análisis, para favorecer aquí a la parte claramente negligente. Por todo ello, yo disiento.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO