Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| LUZ RODRÍGUEZ CRUZ<br><br>Demandante-Apelante<br><br>Vs.<br><br>COMERCIAL CENTERS MANAGEMENT Y OTROS<br><br>Demandados-Apelados | KLAN202400057 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm. BY2022CV04522<br><br>Sala: 402<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de mayo de 2024.

Comparece ante nos, Luz Rodríguez Cruz, (en adelante, "Sra. Rodríguez Cruz" o "Apelante"), quien presenta recurso de Apelación en el que solicita nuestra intervención con una *Sentencia* emitida por el Tribunal de Primera Instancia Sala Superior de Bayamón (en adelante "TPI") el 15 de diciembre de 2023, notificada el 19 de diciembre de 2023. En dicho dictamen el foro de instancia declaró "*Ha Lugar*" la *Moción En Solicitud De Sentencia Sumaria* presentada por Commercial Centers Management (en adelante, "CCM" o "Apelado") y "*No Ha Lugar*" la *Demanda* radicada por la Apelante.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, confirmamos el dictamen mediante los fundamentos que expondremos a continuación.

**-I-**

El 2 de septiembre de 2022, la Sra. Rodríguez Cruz presentó una *Demanda* sobre daños y perjuicios en contra de CCM, mediante

la cual alegó que, el 26 de julio de 2022, al caminar por una de las aceras de las facilidades del "Santa Rosa Mall" en el Municipio de Bayamón, sufrió un tropezón y cayó al suelo violentamente. Añadió que, poco después de la caída, se percató de que había sido causada por un escalón y/o desnivel pintado de manera que hacía imperceptible reconocer la diferencia de la superficie. Por lo anterior, la Apelante argumentó que CCM responde solidaria y/o mancomunadamente por los daños y perjuicios ocasionados por los agentes, empleados y/o representantes del establecimiento comercial, a raíz de los actos y/u omisiones culposos y/o negligentes, en la forma de haber omitido su deber de mantener sus facilidades libres de condiciones peligrosas. En su *Demanda*, la Apelante reclamó al Apelado la cantidad de daños físicos estimados en no menor de $80,000.00 y angustias mentales estimadas en no menor de $30,000.00.

Por su parte, el 11 de octubre de 2022, CCM presentó su *Contestación a Demanda*, mediante la cual negó las alegaciones de la *Demanda* y solicitó que se declare sin lugar. Asimismo, alegó afirmativamente que cualquier negligencia que se pudiera determinar en el litigio le era atribuible exclusivamente a la Apelante. Luego de varios trámites procesales impertinentes, el 14 de julio de 2023, CCM presentó *Moción En Solicitud De Sentencia Sumaria*, en la cual alegó que no existe una controversia real y sustancial sobre los hechos en el caso de autos, por lo que procede que se dicte sentencia sumaria desestimando la *Demanda* por falta de prueba constitutiva para establecer una causa de acción por la caída, al amparo del Art. 1536 del Código Civil de 2020, 31 LPRA sec. 10801. Además, fundamentó lo anterior en los siguientes argumentos: (1) la Apelante se cayó en una rampa de impedidos en una de las aceras del centro comercial, por no mirar al piso por donde caminaba, según lo admitió en su propia deposición; (2) la

rampa de impedidos era claramente visible y estaba correctamente pintada de azul; y (3) la Apelante no se comportó como una persona prudente y razonable, al caminar y no estar pendiente de una rampa de impedidos en la acera.

En respuesta a lo anterior, el 23 de agosto de 2023, la Sra. Rodríguez Cruz, presentó la *Oposición a Sentencia Sumaria*, mediante la cual adujo que existe una clara controversia en cuanto a la existencia de una condición peligrosa en el lugar de los hechos que impide al Tribunal dictar sentencia sumariamente. En síntesis, argumentó lo siguiente: (1) en el lugar de los hechos existía una condición de peligrosidad; (2) dicha condición de peligrosidad se debe a un escalón ubicado en medio de la acera; (3) la peligrosidad de la condición se debía a que el color del escalón se diluía con el color de la rampa, por lo que era imposible distinguir que en esa acera había un escalón; (4) el área no contaba con letreros que advertían la presencia del escalón; y (5) la condición peligrosa fue la causa próxima que provocó la caída de la Apelante.

Así las cosas, el 15 de diciembre de 2023, el TPI dictó *Sentencia* declarando "*Ha Lugar*" la *Moción En Solicitud De Sentencia Sumaria* presentada por CCM. En consecuencia, declaró "*No Ha Lugar*" la *Demanda* presentada por la Sra. Rodríguez Cruz, la cual desestimó con perjuicio.

Insatisfecha con la determinación realizada por el TPI, el 18 de enero de 2024, la Sra. Rodríguez Cruz presentó recurso de Apelación en la cual señaló la comisión de los siguientes errores:

I.   ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA EN DESESTIMAR LA DEMANDA DE MANERA SUMARIA A PESAR DE HABER CONTROVERSIA DE HECHOS MEDULARES RELACIONADOS A LA NEGLIGENCIA IMPUTADA AL DEMANDADO COMMERCIAL CENTERS MANAGEMENT CONFORME A LA PRUEBA QUE OBRA EN EXPEDIENTE Y LA VIDEOGRABACIÓN QUE NO FUE PERMITIDA A PESAR DE SER PRUEBA ADMISIBLE EN EVIDENCIA POR HABERSE ESTIPULADO SU AUTENTICIDAD Y CONTENIDO

POR AMBAS PARTES EN EL INFORME DE CONFERENCIA PRELIMINAR ENTRE ABOGADOS.

II.     ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL ADJUDICARLE TODA LA RESPONSABILIDAD A LA DEMANDANTE BASADO EN QUE MIRABA HACIA EL FRENTE MIENTRAS CAMINABA EN VEZ DE HACIA ABAJO A PESAR DEL ORDENAMIENTO JURÍDICO NO EXIGIR O REQUERIR QUE EL TRANSEÚNTE VAYA MIRANDO HACIA EL SUELO PARA EVITAR TODO POSIBLE ACCIDENTE.

Por su parte, el Apelado presentó el 5 de febrero de 2024, el *Alegato En Oposición A Recurso De Apelación* en el cual reafirmó su posición de que la Apelante carece de prueba para establecer la existencia de un acto u omisión culposa o negligente por parte del establecimiento comercial.

Comparecido las partes y presentado sus escritos, damos por perfeccionado el recurso de epígrafe. Examinado el expediente en su totalidad, procedemos a establecer el derecho aplicable y resolver.

**-II-**

**-A-**

La sentencia sumaria es un mecanismo procesal que tiene como propósito la solución, justa, rápida y económica de los litigios civiles que no contengan controversias genuinas de hechos materiales y que, por lo tanto, no ameritan la celebración de un juicio en su fondo. *Segarra Rivera v. International Shipping Agency, Inc.*, 208 DPR 964, 979 (2022). La Regla 36.1 de Procedimiento Civil establece que las partes podrán presentar una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada. 32 LPRA Ap. V, R. 36.1. La sentencia sumaria es una excepción al juicio mediante testimonios vivos frente al juzgador de los hechos. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430

(2013). La parte que solicita la sentencia sumaria tiene la responsabilidad de demostrar de manera clara que el promovido no puede prevalecer mediante ningún supuesto de hechos y que el tribunal cuenta con la verdad sobre todos los hechos necesarios para resolver la controversia ante su consideración. *Id.* pág. 473

Por su parte, el Tribunal tiene discreción para conceder o no la sentencia sumaria, ya que el mal uso de esta puede despojar a un litigante de su día en corte, lo cual coartaría su debido proceso de ley. *Roig Com. Bank v. Rosario Cirino,* 126 DPR 613, 617 (1990). Es por lo anterior, que no es aconsejable que se utilice el mecanismo de sentencia sumaria cuando hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial para dilucidar la controversia que deban ser evaluados por el juzgador. *Segarra Rivera v. International Shipping Agency, Inc., supra,* pág. 980. No obstante, el Tribunal puede utilizar el mecanismo de sentencia sumaria, aun cuando hay elementos subjetivos, si la evidencia que será considerada en la solicitud surge que no existe controversia en cuanto a los hechos materiales. *SLG Zapata-Rivera v. J.F. Montalvo, supra,* pág. 442-443.

Ahora bien, antes de utilizar el mecanismo de sentencia sumaria, el Tribunal debe evaluar lo siguiente:

> (1) analizará los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos.
>
> *Management Administration Services, Corp v. ELA,* 152 DPR 599, 611 (2000).

En síntesis, el Tribunal de Primera Instancia no podrá dictar sentencia sumaria cuando: "(1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no ha sido refutadas; (3) surja de los propios

documentos que se acompañan con la moción una controversia real sobre hecho material y esencial, o (4) como cuestión de derecho no proceda". *Fernández Martínez v. RAD-MAN San Juan III-D, LLC.*, 208 DPR 310, 335 (2021).

Asimismo, si la otra parte desea derrotar una moción de sentencia sumaria, deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente. *PFZ Props, Inc v Gen, Acc Ins. Co.*, 136 DPR 881, 912-913 (1994). No obstante, el solo hecho de no presentar evidencia que controvierta la presentada por el promovente, no implica necesariamente que procede la sentencia sumaria. *Id.*, pág. 913. Los jueces no están constreñidos por los hechos o documentos evidenciarios que se aduzcan en la solicitud de sentencia sumaria, sino que tienen el deber de considerar todos los documentos en autos, incluso aquella que no haya formado parte de la solicitud, sin dirimir cuestiones de credibilidad. *Vera v. Dr. Bravo*, 161 DPR 308, 333 (2004).

En cuanto al estándar de revisión aplicable al Tribunal de Apelaciones al momento de revisar la determinación del foro primario de conceder o denegar la sentencia sumaria, el foro intermedio apelativo solo puede:

> (1) considerar los documentos que se presentaron ante el foro primario —cual implica que, en apelación los litigantes no pueden añadir prueba que no fue presentada oportunamente ante el foro primario, ni esbozar nuevas teorías—, (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) determinar si el derecho se aplicó de forma correcta.
>
> *Segarra Rivera v. International Shipping Agency, Inc.*, *supra*, pág. 981.

Por utilizar los mismos criterios de evaluación, los foros apelativos se encuentran en la misma posición que el tribunal de instancia. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 116 (2015). Ahora bien, el Tribunal Supremo estableció que el estándar

a seguir para revisar la denegatoria o concesión de una moción de sentencia sumaria es el siguiente:

> (1) que el Tribunal de Apelaciones se encuentre en la misma posición del Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria, y que esta revisión sea *de novo*;
>
> (2) que el Tribunal de Apelaciones revise que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en las Reglas de Procedimiento Civil;
>
> (3) que el Tribunal de Apelaciones revise si en realidad existen hechos materiales en controversia y si existen debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y
>
> (4) si los hechos materiales realmente son incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho en la controversia. *Segarra Rivera v. International Shipping Agency, Inc., supra*, pág. 982.

El Tribunal Supremo de Puerto Rico ha reiterado que "**[t]oda vez que la moción de sentencia sumaria evita la celebración de un juicio, las deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiese, presentados por las partes en apoyo de su contención, deben admitirse en evidencia en un juicio plenario**". *Carpets & Rugs v. Tropical Reps*, 175 DPR 615,637 (2009); *Jusino et als. v. Walgreens*, 155 DPR 560, 577 (2001).

**-B-**

El Art. 1536 del Código Civil de 2020, 31 LPRA sec. 10801, codificó la responsabilidad extracontractual por daños y perjuicios como "[l]a persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo". Ahora bien, sobre el concepto de culpa o negligencia, el Art. 1163 del Código Civil dispone lo siguiente:

> La culpa o negligencia del deudor consiste en la omisión de aquella diligencia que exige la naturaleza de la obligación y corresponde a las circunstancias de las personas, del tiempo y del lugar. Cuando la obligación no expresa la diligencia que debe prestarse en su cumplimiento, se exige la que corresponde a una

persona prudente y razonable. La responsabilidad que procede de la negligencia es exigible en el cumplimiento de toda clase de obligaciones, pero los tribunales, según los casos, pueden moderarla. 31 LPRA sec. 9315.

El Tribunal Supremo de Puerto Rico ha establecido que una persona podrá reclamar un daño sufrido por la culpa o negligencia de otra persona cuando concurren tres (3) requisitos: (1) un acto u omisión culposa o negligente; (2) una relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) un daño real causado al reclamante. *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010).

Sobre el requisito de la relación causal, en nuestra jurisdicción, aplica la doctrina de la causalidad adecuada. Esta doctrina establece que no es causa de responsabilidad toda condición sin la cual no se hubiera producido el daño, sino la que ordinariamente lo produce según la experiencia general. *López v. Porrata Doria*, 169 DPR 135, 151-152 (2006). Nuestro Tribunal Supremo expresó lo siguiente sobre la causa adecuada: "un daño podrá considerarse como el resultado probable y natural de un acto u omisión negligente, si luego del suceso —mirándolo retrospectivamente— éste parece ser la consecuencia razonable y común de la acción u omisión de que se trate". *Santiago v. Sup. Grande*, 166 DPR 796, 818 (2006).

En particular, nuestro Alto Foro ha establecido cómo se configura una causa de acción cuando el daño se debe a una omisión, a saber: (1) cuando existe un deber de actuar y se quebrante esa obligación, y (2) cuando de haberse realizado el acto omitido se hubiese evitado el daño. *Santiago v. Sup. Grande, supra,* pág. 807. El deber de actuar incluye el deber de cuidado que, a su vez, consiste en anticipar y evitar daños que son previsibles. *Íd.*, pág. 808. Asimismo, se configura la negligencia por omisión cuando no se anticipan los daños que una persona prudente y razonable podría

prever. *Colón, Ramírez v. Televicentro de P.R.,* 175 DPR 690, 707 (2009); *Colón y otros v. K-mart y otros,* 154 DPR 510, 517 (2001). Sin embargo, dicho deber de previsión no se refiere a todo peligro, sino aquel peligro anticipable por una persona prudente y razonable. *Santiago v. Sup. Grande, supra,* pág. 808.

Por otra parte, el Tribunal Supremo ha establecido que los propietarios de los establecimientos comerciales tienen el deber de mantener sus facilidades en condiciones de seguridad tales que sus clientes no sufran daños. *Colón y otros v. K-mart y otros, supra,* pág. 518. El dueño u operador de los establecimientos comerciales debe ejercer un cuidado razonable para mantener la seguridad del público y así evitar que sus clientes sufran daños. *Íd.* Es sabido que, los dueños de establecimientos comerciales son responsables por los daños ocasionados por condiciones peligrosas existentes, únicamente cuando dichas condiciones sean conocidas por los propietarios o su conocimiento le sea imputable. *Íd.*; *Cotto v. C. M. Ins. Co.,* 116 DPR 644, 650 (1985). No obstante, dicha responsabilidad no es absoluta, sino que el demandante debe probar que el dueño no ejerció el debido cuidado para mantener la seguridad de los clientes. *Ramos v. Wal-Mart,* 165 DPR 510, 513 (2005). *Colón y otros v. K-mart y otros, supra,* pág. 518. Sobre la anterior norma, el Tribunal Supremo expresó:

> En innumerables ocasiones este Tribunal ha resuelto que una empresa que opera un establecimiento abierto al público con el propósito de llevar a cabo operaciones comerciales para su propio beneficio tiene el deber de mantener dicho establecimiento en condiciones tales de seguridad que sus clientes no sufran daño alguno. Sin embargo, al establecer dicha normativa este Tribunal nunca ha pretendido **convertir al dueño de un establecimiento comercial en asegurador absoluto de la seguridad de sus visitantes ni imponerle a éste una responsabilidad absoluta frente a cualquier daño sufrido por sus clientes**. *Ramos v. Wal-Mart, supra,* pág. 513 (énfasis suplido y citas omitidas).

Por tanto, la responsabilidad de los establecimientos comerciales se evalúa conforme el Art. 1536 del Código Civil, *supra.*

En síntesis, para que el demandante pueda prevalecer en su causa, debe establecer que: (1) su daño se debió a la existencia de una condición peligrosa; (2) que esa condición fue la que con mayor probabilidad ocasionó el daño; y (3) que ésta era conocida por el demandado o que debió conocerla. *Colón y otros v. K-mart y otros*, *supra*, pág. 519. Más aun, vale destacar que nuestro Tribunal Supremo ha establecido que una persona se puede resbalar mientras camina y caerse sin mediar negligencia alguna de otra persona. *Cotto v. C. M. Ins. Co.*, *supra*, pág. 653.

En lo pertinente, nuestro Alto Tribunal ha resuelto que las rampas destinadas a facilitar el movimiento de sillas de personas físicamente incapacitadas: (1) son perceptibles a simple vista y sin mayor esfuerzo; (2) no representan una condición inherentemente peligrosa; y (3) no requieren se provean avisos sobre su existencia. *Torres v. Municipio de Mayagüez*, 111 DPR 158, 162 (1981). En el caso precitado, nuestro Alto Foro determinó que el Municipio de Mayagüez no había incurrido en responsabilidad extracontractual cuando la demandante en dicho caso se cayó, a plena luz del día, en una rampa de impedidos que estaba terminada sin pintura amarilla en su superficie o bordes y sin aviso expreso sobre su existencia. Sobre la pintura amarilla de la superficie o borde de la rampa, es menester señalar que, aunque ciertamente la hace más visible y evidente al ojo humano, tal medida es una señal de tránsito puramente de carácter regulatorio, con la finalidad de avisar su existencia y prohibir a los conductores de vehículos que la obstruyan mediante estacionamiento conflictivo a su uso. *Íd.* Por consiguiente, no es una especificación dirigida a la salvaguarda del peatón, aun cuando incidentalmente le sirva para notarla. *Íd.* Conforme el derecho anteriormente esbozado, la Alta Curia expresó lo siguiente:

Recuérdese que si bien un peatón no está obligado a constantemente ir mirando hacia la superficie, ciertamente debe evitar el caminar ajeno a aquellas situaciones visibles a su perspectiva visual. La situación es análoga al cuidado normal que se requiere para evitar chocar con un rótulo de tránsito instalado dentro de una acera en forma vertical o el sufrir una caída al pasar de la superficie del pavimento de la carretera hacia el nivel más alto de la acera sin tropezar con su borde. *Íd.*, pág. 163.

**-III-**

Por estar intrínsecamente relacionados, discutiremos en conjunto los señalamientos de error. En síntesis, la parte apelante plantea que el TPI erró al desestimar sumariamente la *Demanda*, por existir controversias de hechos medulares sobre la negligencia del Apelado. Además, la Apelante aduce que se mantiene en controversia la existencia de una condición de peligrosidad y que dicha condición fue mantenida por la parte apelada, lo que constituye la causa próxima de la caída y por tanto, la alegada negligencia del Apelado.

Por su parte, la parte apelada argumenta que no existen controversias reales y sustanciales, ni prueba constitutiva para probar algún acto u omisión culposo o negligente de parte de CCM. Además, el Apelado alega que la Apelante sufrió la caída por su propia negligencia ya que la rampa de impedidos era claramente visible y estaba correctamente pintada de azul.

Es sabido que, al momento de revisar una determinación del foro de instancia respecto a una solicitud de sentencia sumaria, estamos llamados a realizar una revisión *de novo* y limitarnos únicamente a adjudicar las controversias con los documentos presentados ante el foro de instancia. Del análisis *de novo* de la prueba que se presentó ante el TPI, entendemos que no existen controversias sobre los hechos establecidos en la *Sentencia* apelada.

Según lo anterior, acogemos como nuestras las siguientes determinaciones de hechos, al estar sustentadas en la prueba que obra en los autos:

1) El 26 de julio de 2022, la demandante, señora Rodríguez visitó las facilidades del centro comercial Santa Rosa Mall en el Municipio de Bayamón.

2) La demandante sufrió una caída al caminar por una de las aceras del centro comercial.

3) Existe un video que capta todo lo sucedido. En dicho video se observa la acera donde la demandante sufre una caída, así como también se puede apreciar una rampa de impedidos correctamente pintada de azul.

4) Se puede observar de las tomas de video a la demandante apareciendo por los conos anaranjados.

5) En el video, la demandante comienza a caminar por la acera. No tiene nada que obstruya su visibilidad hacia el frente.

6) En el video, la demandante camina por la rampa de impedidos.

7) El video muestra cuando la demandante pierde el balance en la rampa de impedidos.

8) De acuerdo con el video, la demandante cae al suelo.

9) La demandante admitió en su deposición que no miró para el piso mientras caminaba por la acera. Esta fueron sus expresiones:

P: "Okay" Le pregunto, ¿si usted sabe qué fue lo que ocasionó su caída?

R: Bueno para mí que, eh, la, la parte donde yo iba caminando estaba identificada como si fuese una rampa. Tú sabes, como si fuese parte de la acera y la acera porque eso estaba pintado en azul.

P: "Okay".

R: Y, y me fui de boca.

P: ¿Hacia dónde usted estaba mirando en el momento que ocurre el incidente?

R: Hacia al frente.

P: "Okay". ¿Estaba mirando hacia el piso?

R: No, porque uno camina mirando hacia al frente.

A la luz de los anteriores hechos incontrovertidos, debemos determinar si procedía dictar sentencia sumaria o no. La

contestación es en la afirmativa. Conforme hemos adelantado, el foro de instancia desestimó la causa de acción por entender que la Apelante no controvirtió los hechos propuestos por el Apelado. Asimismo, el TPI determinó que la caída de la Sra. Rodríguez Cruz no fue producto de una condición peligrosa, como tampoco fue causada por algún acto u omisión negligente de parte de CCM.

En el caso ante nuestra consideración, no existe controversia en torno a que la Sra. Rodríguez Cruz sufrió una caída en la rampa de impedidos de las facilidades del "Santa Rosa Mall" en Bayamón. No obstante, lo que corresponde determinar, es si la caída fue causada por una condición peligrosa que CCM permitió que subsistiera. Luego de estudiar el expediente con detenimiento, concluimos que el foro primario no erró en su determinación, toda vez que la Apelante no controvirtió el hecho de la inexistencia de una condición de peligrosidad.

En apoyo de su solicitud de sentencia sumaria, CCM incluyó la transcripción de la deposición de la Sra. Rodríguez Cruz. Del expediente, se desprende que durante la misma ésta expresó que, el día de los hechos, no miró para el piso mientras caminaba por la acera, sino que estaba mirando hacia al frente.[1] Del estudio de la deposición antes citada y de la prueba que obra en los autos, se desprende la inexistencia de un acto u omisión negligente atribuible a la parte apelada, ni que esta última haya contribuido a la producción del daño reclamado. Primeramente, se desprende con meridiana claridad que la rampa en donde ocurrió la caída de la Apelante estaba debidamente pintada y era perceptible a la vista. En segundo término, el accidente se suscitó a plena luz del día y en el trayecto de la acera en que ocurrió el accidente no surge barrera alguna que limitara u obstruyera la visibilidad de la Sra. Rodríguez

---

[1] *Véase, Apéndice del recurso,* pág. 26.

Cruz al caminar por el lugar. De hecho, en su *Oposición a Sentencia Sumaria,* la Apelante reconoció que ciertas fotografías de captura de pantalla de un video tomado por las cámaras de seguridad del establecimiento comercial que se hicieron formar parte de la solicitud de sentencia sumaria reflejaban que la rampa de impedidos estaba pintada de azul.

Es importante señalar que las referidas fotografías provienen del video provisto por la propia parte apelante en su recurso ante nos. De la misma, se puede apreciar que la rampa de impedidos estaba completamente visible, pintada de azul y no mostraba rasgos de deterioro o falta de mantenimiento. A tono con lo anterior, el Tribunal Supremo expresó:

> Una rampa de acceso a las aceras de las calles y avenidas de Puerto Rico construidas especialmente para que personas inválidas en sillas de ruedas puedan cruzarlas de forma segura y conveniente, es perceptible a simple vista y sin mayor esfuerzo por lo que **no representa per se una condición inherentemente peligrosa** para el transeúnte que utiliza las aceras ni requiere que se provean avisos sobre su existencia. *Torres v. Municipio de Mayagüez, supra,* pág. 162 (énfasis suplido).

Consecuentemente, el foro primario correctamente concluyó que no existía una condición peligrosa. De la prueba se puede apreciar que existía un escalón pintado de azul, al igual que la rampa de impedidos. Sin embargo, es sabido que "un peatón no está obligado a caminar mirando continuamente hacia la acera, **pero tampoco debe caminar ajeno a lo que es fácilmente perceptible a su vista**". *Íd.,* pág. 163 (énfasis suplido). Eso fue lo que, precisamente ocurrió en el caso de autos. Reconocemos que la Sra. Rodríguez Cruz no estaba obligada a caminar mirando continuamente hacia la acera, sin embargo, **nuestra jurisprudencia ha sido clara en cuanto a que ello tampoco implica que pueda caminar ajena a lo que es fácilmente perceptible a su vista**, ya

que el escalón, al igual que la rampa, estaban clara y fácilmente visibles y diferenciados del resto de la superficie por pintura azul.

Por tal razón, reafirmamos que "el mero hecho de que acontezca un accidente, no da lugar a inferencia alguna de negligencia". *Admor. F.S.E. v. Almacén Ramón Rosa*, 151 DPR 711 (2000). Lo anterior debido a que, para que prospere una acción en daños y perjuicios, deberán concurrir los siguientes elementos: el daño, un acto culposo o negligente y un nexo causal entre el daño y la acción culposa o negligente. Conforme lo anterior, el Art. 1536 del Código Civil, *supra*, obliga a la persona que ocasiona un daño a reparar el mismo únicamente si ha mediado culpa o negligencia. Al ser indispensable los tres requisitos, resulta evidente que no existe una causa de acción por daños y perjuicios en el caso de epígrafe porque CCM no incurrió en un acto culposo o negligente, pues no existía una condición peligrosa en el lugar de los hechos. Nótese que la caída de la Apelante ocurrió a plena luz del día, la rampa estaba pintada de azul y no existían elementos que limitaran la visibilidad de la Sra. Rodríguez Cruz en el lugar de los hechos.

Así pues, por entender que no hay hechos esenciales en controversia y que el TPI resolvió conforme a derecho, concluimos que actuó correctamente dicho foro al dictar sentencia sumariamente y desestimar la *Demanda* de epígrafe.

### -IV-

Por los fundamentos expuestos, los cuales hacemos formar parte integral del presente dictamen, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones