Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL (VI)[1]

| DOLORES REYES SANTAELLA Recurrida | | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina |
| | TA2025CE00451 | |
| v. | | Caso núm.: CA2024CV01293 |
| OMARA TOLEDO SANTANA Peticionaria | | Sobre: Desahucio en Precario |

Panel Especial integrado por su presidenta la jueza Ortiz Flores, el juez Rivera Torres y el juez Campos Pérez.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 10 de noviembre de 2025.

Comparece ante este tribunal apelativo, la Sra. Omara Toledo Santana (señora Toledo Santana o peticionaria) mediante el recurso de *certiorari* de epígrafe solicitándonos que revisemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI), el 26 de agosto de 2025, notificada el mismo día. Mediante este dictamen, el foro primario resolvió no eximir a la peticionaria, participante de los servicios de las Organizaciones de Oficina Legal de la Comunidad, Inc. (OLC) y del Proyecto de Desarrollo Económico Comunitario y Derecho a la Ciudad de la Facultad de Derecho (Proyecto DeCiudad), adscritas a la Clínica de Asistencia Legal (CAL) de la Facultad de Derecho de la Universidad Interamericana de Puerto Rico (UIPR), del pago de toda clase de derechos, aranceles, contribuciones o impuestos de cualquier naturaleza dispuestos por las leyes vigentes en la tramitación de procedimientos judiciales.

---

[1] Mediante la Orden Administrativa OATA-2025-177 se modifica la integración del Panel, ello debido a que la jueza Rivera Pérez dejó de ejercer funciones como Jueza del Tribunal de Apelaciones.

Asimismo, el foro *a quo* dispuso que, ante la falta de evidencia que demostrase que la peticionaria carezca de los recursos mínimos para prestar la fianza en apelación, no procedía automáticamente eximirla de otorgar la misma. Por lo que, señaló la *Vista de Indigencia* para reexaminar la capacidad económica de la señora Toledo Santana y determinar si procede eximirla del requisito de fianza en apelación.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* solicitado y revocamos la determinación recurrida. En consecuencia, dejamos sin efecto la paralización de los procedimientos.

**I.**

El 19 de abril de 2024, la Sra. Dolores Reyes Santaella (señora Reyes Santaella o recurrida) instó una demanda sobre desahucio en precario contra la peticionaria.[2] El 7 de mayo de 2024, el TPI dictó una *Orden* señalando la vista de desahucio para el 30 de mayo siguiente a las 9:30 a.m. mediante el sistema de videoconferencia.[3]

Llegado ese día, y luego de haber sido emplazada, la señora Toledo Santana, representada por la OLC y la CAL de la Facultad de Derecho de la UIPR, presentó una *Moción Asumiendo representación Legal y Solicitud de Desestimación.*[4] Esto, a través de los servicios del Proyecto de Desarrollo Económico Comunitario y Derecho a la Ciudad de la Facultad de Derecho (Proyecto DeCiudad), adscrito a la CAL de la UIPR. Mediante esta, se esbozó que la señora Toledo Santana solicitó y cualificó para los servicios de representación legal gratuita por estas entidades.

---

[2] Véase, el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), Entrada núm. 1.

[3] SUMAC TPI, Entrada núm. 5.

[4] SUMAC TPI, Entrada núm. 7. Al final del escrito se indicó que:
***Se presenta libre de derechos, 4 LPRA § 303a (2021), por las partes comparecientes ser representadas por la Oficina Legal de la Comunidad, Inc., y la Clínica de Asistencia Legal de la Facultad de Derecho de la Universidad Interamericana de Puerto Rico.*** (Énfasis nuestro)

La vista de desahucio se celebró según pautada. Al día siguiente, el 31 de mayo, el TPI emitió una *Resolución* declarando que las alegaciones de la demanda eran suficientes y que una acción de desahucio era un acto de administración para el cual no tenían que concurrir todos los miembros de una sucesión.[5] Más aún, el foro recurrido expresó que en dicho dictamen atendía la "*... Solicitud de Desestimación presentada el 30 de mayo 2024 por la demandada **a través de sus representantes legales** ...*".

En igual fecha, el foro primario dictó y notificó la *Sentencia* mediante la cual declaró *Con Lugar* a la demanda y ordenó el desalojo de la señora Toledo Santana, en el término de treinta (30) días, e **impuso una fianza en apelación de ochocientos dólares ($800).**[6]

Inmediatamente recibido el dictamen, la señora Toledo Santana presentó una *Moción de Reconsideración a Fijación de Fianza en Apelación*, mediante la cual le solicitó al TPI que la eximiera del requisito de la fianza por esta ser insolvente y por estar representada por la OLC.[7] Añadió que, del expediente judicial, surge que la peticionaria estaba representada por organizaciones que ofrecen servicios legales gratuitos para personas de escasos recursos económicos, tras cumplir con los criterios de elegibilidad de la OLC sobre su condición de vulnerabilidad social y económica.

Inconforme con la determinación, el 7 de junio de 2024, la peticionaria instó un recurso de apelación ante este foro intermedio. Mediante la *Sentencia* del 21 de junio de 2024, esta *Curia* resolvió que carecía de jurisdicción y, en consecuencia, se ordenó la desestimación del caso (KLAN202400566).[8] En el dictamen, y en lo aquí concerniente, se expresó:

---

[5] SUMAC TPI, Entrada núm. 9.
[6] SUMAC TPI, Entrada núm. 10.
[7] SUMAC TPI, Entrada núm. 11.
[8] SUMAC TPI, Entrada núm. 14.

> Del trámite procesal del caso de autos surge que el TPI dictó y notificó la *Sentencia* apelada el 31 de mayo de 2024. En dicho dictamen, se estableció una fianza en apelación por la cuantía de ochocientos dólares ($800.00). **De la revisión del expediente electrónico del caso CA2024CV01293 en el SUMAC no surge que el TPI hubiera realizado una determinación previa de insolvencia a pesar de la parte apelante haber comparecido representada por la Oficina Legal de la Comunidad Inc. y la Clínica de Asistencia Legal de la Facultad de Derecho de la Universidad Interamericana de Puerto Rico**. (Énfasis nuestro)

En desacuerdo con dicha determinación, la peticionaria presentó oportuna reconsideración ante nuestra consideración. En la solicitud esta arguyó que del expediente del caso surgía el estado de indigencia de la señora Toledo Santana, según determinado por la OLC, y así fue consignado en la primera comparecencia ante el TPI. Por tanto, expuso que el Tribunal de Apelaciones debió concluir que esta era indigente, según precedentes del más alto foro discutidos en el petitorio, y no declararse sin jurisdicción.

Mediante la *Resolución* emitida el 11 de julio de 2024, la mayoría del Panel declaró *No Ha Lugar* a la reconsideración y la Jueza Rivera Pérez, entonces Jueza Ponente y actualmente Magistrada del Tribunal Supremo, entendió que procedía reconsiderar acorde con los argumentos expuestos en la moción.

Todavía inconforme, el 12 de agosto de 2024, la peticionaria presentó una *Solicitud de Certiorari* ante el Tribunal Supremo de Puerto Rico. Arguyó en su escrito que el Tribunal de Apelaciones erró al determinar que carecía de jurisdicción para atender el recurso en sus méritos. Ello, tras razonar que del expediente surgía que la señora Toledo Santana es una persona indigente, según fue evaluada y cualificada por la OCL y la CAL de la UIPR. Así, solicitó que se le ordenara al foro apelativo resolver el caso en sus méritos sin el pago de la fianza.

El 29 de julio de 2025, el Tribunal Supremo emitió la *Sentencia* en el caso CC-2024-0490, mediante la cual revocó el dictamen de este foro intermedio y devolvió el caso al TPI. En la

*Sentencia,* la más alta *Curia* ordenó al tribunal primario determinar si las organizaciones sin fines de lucro, que representan a la peticionaria, están cubiertas por la Ley núm. 81 de 26 de junio de 1964, conocida como la *Ley para eximir a las personas que sean atendidas por las clínicas de asistencia legal de las escuelas de derecho de Puerto Rico del pago de toda clase de derechos, aranceles, contribuciones o impuestos,* 4 LPRA sec. 303a *et seq.,* (Ley núm. 81) o si cumplen con los requisitos para beneficiarse de la Ley núm. 122 de 9 de junio de 1967, *conocida como Ley para eximir de toda clase de aranceles a la Corporación de Servicios Legales de Puerto Rico y otras entidades análogas,* 32 LPRA sec. 1500 *et seq.* (Ley núm. 122). Añadió, que, en caso contrario, el TPI deberá reexaminar la capacidad económica de la peticionaria para fines de considerar una exención de fianza en apelación.

Devuelto el caso al TPI, y recibido el mandato, el 26 de agosto de 2025, el foro primario emitió la *Resolución* impugnada en la que determinó que la OLC y Proyecto DeCiudad, no se encuentran cubiertas por la Ley núm. 81 ni por la Ley núm. 122. El TPI razonó que: (1) la Ley núm. 81 no era de aplicación porque no compareció ningún estudiante en los escritos y; (2) la Ley núm. 122 no podía cobijar a organizaciones que, al menos en una (1) ocasión, representaron a una corporación. Además, coligió que el *Reglamento para Solicitar el Certificado de Exención en el Pago de Sello, Aranceles, Contribuciones e Impuestos de Cualquier Naturaleza Requeridos en el Trámite de Procesos Judiciales, Certificaciones Administrativas o en Documentos Notariales del Departamento de Justicia* (Reglamento Núm. 9537 de 1 de marzo de 2024) exige la obtención de un Certificado de Exención expedido por el Secretario de Justicia. "En este expediente no aparece constancia alguna de dicho certificado. Sin ese requisito, la puerta de la Ley 122 permanece cerrada."

De igual manera, el foro *a quo* entendió que, ante la falta de evidencia que demostrase que la peticionaria careciera de los recursos mínimos para prestar la fianza en apelación, no procedía automáticamente eximirla de otorgar la misma. Por ello, pautó una *Vista de Indigencia* para reexaminar la capacidad económica de la señora Toledo Santana y determinar si procede eximirla del requisito de fianza en apelación.

En desacuerdo con la determinación del TPI, la peticionaria presentó escrito intitulado *Solicitud de Reconsideración.*[9] Mediante esta, señaló que erró el tribunal al establecer que Proyecto DeCiudad es una organización independiente con personalidad jurídica propia, y ajena a la CAL. A su vez, que incidió el foro primario tras declarar a la OLC como una organización no exenta, a pesar de esta estar certificada por el Secretario de Justicia como una organización análoga a la Corporación de Servicios Legales de Puerto Rico. Por último, apuntaló que el foro recurrido violentó el debido proceso de ley al no realizar una vista evidenciaria o solicitar la documentación que acreditara la certificación de la OLC y de que Proyecto DeCiudad es un programa creado por la CAL y parte de la misma.

Finalmente, la parte peticionaria anejó a su petitorio la *Certificación* expedida por el Secretario de Justicia en la que certificó que de la OLC es una organización dedicada a ofrecer servicios legales gratuitos, cuyas funciones y propósitos son similares a los de la Corporación de Servicios Legales y, por tanto, está cobijada por la exención otorgada en la Ley núm. 122.[10] Asimismo, incluyó el contrato de fondos de acceso a la justicia, mediante el cual se subvenciona el Proyecto DeCiudad, como parte de la CAL, para ofrecer servicios legales gratuitos en casos civiles a personas de escasos recursos con el fin de vindicar el derecho a la vivienda.[11] El

---

[9] SUMAC TPI, Entrada núm. 46.
[10] SUMAC TPI, Entrada núm. 46, Anejo 2.
[11] SUMAC TPI, Entrada núm. 46, Anejo 3.

12 de septiembre de 2025, el TPI emitió una Resolución denegando la solicitud de reconsideración, más mantuvo el señalamiento de la *Vista de Indigencia*, según pautada.

Todavía inconforme, la peticionaria acudió ante este tribunal intermedio imputándole al tribunal primario haber incurrido en el siguiente error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL RESOLVER QUE LA OFICINA DE LA COMUNIDAD, INC. Y LA CLÍNICA DE ASISTENCIA LEGAL DE LA FACULTAD DE DERECHO DE LA UNIVERSIDAD INTERAMERICANA DE PUERTO RICO NO ESTÁN COBIJADAS POR LAS LEYES NÚM. 122 DE JUNIO DE 1967 Y NÚM. 81 DE JUNIO DE 1964, RESPECTIVAMENTE.

El 15 de septiembre de 2025, junto al recurso de *certiorari*, la peticionaria incluyó una *Moción en Auxilio de Jurisdicción.* Allí, solicitó la paralización de los procedimientos en tanto el foro intermedio resolviera la controversia planteada.

Al día siguiente, emitimos una *Resolución* declarando *Ha Lugar* a la *Moción en Auxilio de Jurisdicción.* Por lo que, se ordenó la paralización de la *Vista de Indigencia* señalada para el 17 de septiembre de 2025. A su vez, le concedimos a la parte recurrida, el término de diez (10) días para que presentara su alegato.

El 18 de septiembre siguiente, la parte recurrida cumplió con lo ordenado, por lo que nos damos por cumplidos y, a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

II.

**Auto de *Certiorari***

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders at al. v. BBVAPR*, 185

DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334-335 (2005). Para poder ejercer sabiamente nuestra facultad discrecional en la consideración de los asuntos planteados mediante dicho recurso, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62-63, 215 DPR __ (2025), dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Estos criterios sirven de guía para poder determinar, de manera sabia y prudente, si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra el caso. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). Es decir, que el examen que emplea el foro apelativo no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra*, a la pág. 176.

De otra parte, el ejercicio de las facultades del Tribunal de Primera Instancia merece nuestra deferencia, por tanto, solo intervendremos con el ejercicio de dicha discreción en aquellas instancias que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción; o (3) se equivocó en la interpretación de cualquier norma procesal o

de derecho sustantivo. *BBPR v. SLG Gómez-López,* 213 DPR 314, 334-335 (2023); *Ramos v. Wal-Mart,* 165 DPR 510, 523 (2006); *Rivera Durán v. Banco Popular de Puerto Rico,* 152 DPR 140, 155 (2000).

**Exención del pago de aranceles**

La Ley núm. 81 de 26 de junio de 1964, conocida como la *Ley para Eximir a las Personas que sean Atendidas por las Clínicas de Asistencia Legal de las Escuelas de Derecho de Puerto Rico del Pago de Toda Clase de Derechos, Aranceles, Contribuciones o Impuestos,* 4 LPRA sec. 303a *et seq.* (Ley núm. 81), tiene como propósito el facilitar el acceso a servicios legales gratuitos ofrecidos por las Clínicas de Asistencia legal de las Escuelas de Derecho para personas de escasos recursos. Por virtud de esta ley, se creó la exención del requisito de pago de sellos legales en los casos atendidos por estas clínicas con el fin de agilizar la labor del estudiantado practicante en las Escuelas de Derecho del país, desarrollar consciencia sobre los deberes sociales de la profesión y eliminar los obstáculos económicos para la ciudadanía que requiera asistencia legal gratuita.

La Ley núm. 81, reconoce dos asuntos medulares relacionados a las clínicas de asistencia legal: (1) su fin pedagógico para con los estudiantes y; (2) facilitar la tramitación de los casos para las personas bajo condición económica limitada que reciban los servicios de las clínicas. Por ello, en el Artículo 1, 4 LPRA sec. 303a Inciso (a), se establece que:

> "[e]n todo lo que fuera pertinente al desempeño de sus funciones y logro de sus objetivos, o necesario para el trámite de los casos o asuntos **en que estuvieren interviniendo las clínicas a beneficio de las personas a quienes por su condición económica limitada les estén prestando servicios legales gratuitos, las personas a quienes ellas sirvan, quedan por la presente exentas del pago de toda clase de derechos, aranceles o impuestos de cualquier naturaleza prescritos por las leyes vigentes para la tramitación de procedimientos judiciales** (. . .)"(Énfasis nuestro)

Por otro lado, la Ley núm. 122 del 9 de junio de 1967, conocida como la *Ley para Eximir de Toda Clase de Aranceles a la Corporación de Servicios Legales de Puerto Rico y Otras Entidades Análogas*, 32 LPRA sec. 1500 *et seq.* (Ley núm. 122), fue creada bajo la necesidad de brindar a las personas indigentes toda la ayuda legal posible, de modo que puedan cobrar plena conciencia de sus derechos. Véase, Exposición de Motivos de la Ley núm. 122. En ese sentido, la Asamblea Legislativa ha reconocido la importancia de los servicios legales gratuitos a personas en condición de pobreza y el provecho de las organizaciones sin fines de lucro en su rol social.

Conforme a lo establecido en este estatuto, la Corporación de Servicios Legales de Puerto Rico, Inc., como las entidades análogas sin fines de lucro **están exentas de cubrir cualquier cargo asociado al trámite de los casos o asuntos en que estuvieren interviniendo a beneficio de las personas a quienes están prestando servicios legales gratuitos**, del pago de toda clase de derechos, aranceles, contribuciones o impuestos de cualquier naturaleza dispuestos por las leyes vigentes para la tramitación de procedimientos judiciales y la expedición de certificaciones en los centros del Gobierno Estatal, incluyéndose el sello forense y los impuestos notariales. Artículo 1 de la Ley Núm. 122.

En particular, para que un cliente de las clínicas o de estas organizaciones sin fines de lucro pueda recibir servicios gratuitos, este debe ser cualificado. *Servicios Legales et al. v. Registradora*, 211 DPR 393, 409 (2023). La evaluación de las cualificaciones del cliente para recibir la asistencia legal gratuita **le compete de manera exclusiva a la entidad que presta los servicios a personas de capacidad económica limitada**. Véase *Feliciano v. Tribunal Superior*, 99 DPR 504, 508 (1970); *Servicios Legales et al. v. Registradora,* supra, a las págs. 409-410. En este sentido, la cualificación de los clientes tiene como fin el asegurar que los

servicios legales gratuitos se otorguen solamente a personas de escasos recursos.

Por último, la Ley núm. 122, delega en el Secretario de Justicia el deber de reglamentar, llevar constancia, **autorizar y certificar previamente a las organizaciones o entidades exentas bajo esta ley**. Artículo 2 del estatuto. Cónsono con este mandato, el Departamento de Justicia emitió el Reglamento Núm. 9537. En el Artículo 6 (D)(2)(c) se establece que parte de la información a ser evaluada es que uno de los propósitos de la organización sea ofrecer servicios legales gratuitos a personas indigentes, lo cual deberá surgir de cualquiera de los documentos oficiales que acrediten la información suministrada a la agencia, según dispuestos en el Artículo 6 (B). Finalmente, el Artículo 6 (E) del Reglamento establece que si la organización sin fines de lucro cumple con los requisitos a satisfacción del Secretario, se expedirá un Certificado de Exención.

**III.**

En esencia, la peticionaria señaló que erró el foro primario al determinar que la OLC y Proyecto DeCiudad, a través de la CAL de la Facultad de Derecho de la UIPR, no cualifican para las exenciones bajo la Ley núm. 81 y la Ley núm. 122. Como explicaremos más adelante, le asiste la razón.

De entrada, advertimos que la controversia planteada está incluida en las instancias que esta *Curia* puede atender al palio de los criterios de nuestra Regla 40, *supra*. En consecuencia, al estar presente algunos de estos, determinamos expedir el recurso solicitado, en especial, por ser el momento más propicio para atenderlo, tratándose de un asunto de interés público y, así, evitar un fracaso irremediable de la justicia.

Como regla general, las sociedades organizadas se dividen en dos sectores principales, el público y el privado. El elemento esencial del sector público es que el control final de las operaciones lo ejercen

representantes electos -directa o indirectamente- por el pueblo. De otro lado, el sector privado es el formado por individuos privados, ajenos a la acción gubernamental, y que comprende actividades con fines lucrativos. Al primer sector lo componen los funcionarios o servidores públicos, mientras al segundo lo relacionamos tradicionalmente con los empresarios y las personas que laboran para estos.[12]

Ahora bien, en sociedades complejas y desarrolladas, como sucede en Puerto Rico, existen otros grupos que no pueden ser catalogados bajo ninguno de estos dos sectores. Así, nos referimos a personas motivadas por gestiones con inquietudes sociales, religiosas, solidarias o, incluso, cívicas. Estos grupos componen lo que conocemos como *el tercer sector*, que une peculiaridades de los principales sectores antes mencionados. Es decir, promotores de gestiones sociales y de alto interés público que no persiguen como fin el lucro, pero que tampoco forman parte de la gestión gubernamental.[13]

Estas entidades sin fines de lucro canalizan los esfuerzos ciudadanos más allá de la acción gubernamental, ello para buscar soluciones a ciertos problemas sociales en los que el sector público, por lo general, no se concentra.[14] En ese sentido, como regla general, estas organizaciones cumplen con una función social que, a menudo, le es complicado al estado satisfacer. Muchas organizaciones del tercer sector llenan los vacíos existentes debido a la ausencia en la sociedad de instituciones gubernamentales que presten determinados servicios.[15]

Relativo a lo anterior, en Puerto Rico se ha reconocido la necesidad apremiante de la prestación de servicios legales a

---

[12] Véase, C. Díaz Olivo, *Sin Fines de Lucro: Normativa Jurídica del Tercer Sector,* 2da. ed. rev., Ed. AlmaForte, a las págs. 14-15.
[13] *Íd.*, a la pág. 15.
[14] *Íd.*, a la pág. 17.
[15] *Íd.*, a la pág. 46.

personas de recursos limitados.[16] Incluso, con el anterior Código de Ética Profesional, 99 DPR 999 (1970) (derogado), nuestro más alto foro establecía la importancia de la función social de la práctica de la abogacía en Puerto Rico y la necesidad de reunir esfuerzos entre el gremio para atender de forma gratuita a personas insolventes o en condición de pobreza. Canon 1 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 1., derogado. A su vez, en múltiples instancias, se ha reiterado el deber y compromiso de la acción gubernamental de garantizar el acceso a la representación legal a personas de escasos recursos económicos, ello como corolario del principio constitucional de igualdad ante la ley del Artículo II, Sección 1 de nuestra Constitución.[17] Pues, no existe realmente la justicia, sin el acceso a esta y a los tribunales para poder vindicar los derechos de la ciudadanía. Por acceso a la justicia nos referimos al conjunto de condiciones que facilitan o dificultan el que determinados grupos, sectores o personas puedan hacer uso equitativo de los mecanismos y procesos establecidos para la prevención de la violación de sus derechos.[18] El acceso a la justicia tiene por objeto garantizar los derechos de todos y todas, y no simplemente proclamarlos.[19]

Así las cosas, las tres ramas de gobierno han realizado diversos esfuerzos con la intención de disminuir las barreras que dificultan el acceso a la justicia en Puerto Rico. El Poder Judicial lo ha hecho, principalmente, a través del establecimiento y la

---

[16] Véase, Reglas de conducta Profesional de Puerto Rico. Capítulo VI, *In Re Reglas de Conducta Profesional de Puerto Rico*, Resolución ER-2025-02 del 17 de junio de 2025.

[17] Véase, además, el *Reglamento Para la Asignación de Abogados(as) de Oficio de Puerto Rico*, Aprobado por Resolución de 12 de octubre de 2018, ER-2018-04, según enmendado.

[18] E. Rivera Ramos, "Las múltiples caras del acceso a la justicia", en *Primer Congreso Acceso a la Justicia—XXII Conferencia Judicial*, San Juan, Pubs. Puertorriqueñas, 2005, pág. 8.

[19] "El acceso a la justicia como derecho", en H. Birgin y B. Kohen, *Acceso a la justicia como garantía de igualdad. Instituciones, actores y experiencia comparadas*, Buenos Aires, Ed. Biblos, 2006, págs. 16–17. Véase, también, L.F. Estrella Martínez, *Acceso a la Justicia: Derecho Humano Fundamental*, San Juan, PR, Ed. Situm, Inc., 2017, pág. 18 (2017). En donde establece que la posesión de los derechos sin más, carece de sentido si no existen los mecanismos para hacerlos efectivo.

regulación del deber y la función social de los practicantes de la abogacía, entre otros. Mientras, la Rama Legislativa a través del establecimiento de diversas leyes eximiendo del pago de aranceles a personas insolventes y a las organizaciones reconocidas por la prestación de servicios gratuitos, por ejemplo, la Ley núm. 81 y la Ley núm. 122. Finalmente, la Rama Ejecutiva, a través de su Secretario de Justicia al reglamentar, regular, investigar y certificar a las organizaciones bajo la Ley núm. 122 y de esta manera, permitir mayor acceso en los procesos ante las agencias.

En ese sentido, las Clínicas de Asistencia Legal de las Escuelas de Derecho y diversas entidades sin fines de lucro como OLC, Servicios Legales de Puerto Rico, Servicios de Asistencia Legal, entre otras, han servido como brazo extendido de la acción gubernamental al brindarle a la comunidad puertorriqueña y a las poblaciones marginadas asesoría y representación legal libre de costos, en asuntos administrativos y judiciales. Estas organizaciones sin fines de lucro han ofrecido, por décadas, representación gratuita a personas pertenecientes a poblaciones empobrecidas. Esto, en aras de contribuir con el desarrollo del acceso a la justicia en nuestra jurisdicción.

Por ello, muchas de estas organizaciones, principalmente, las Clínicas de Derecho, han desarrollado diversidad de proyectos, pro-bonos, y consorcios con el motivo principal de acceder a fondos privados, federales y estatales para lograr atender a la cantidad de personas de escasos recursos que acuden ante estas. Ello, enfocados en una gestión social de alto interés público y en apoyo a la gestión gubernamental. Lo que ha conllevado que las clínicas cada vez se organicen por áreas específicas del derecho para servir a poblaciones determinadas, según lo requiera cada subvención.

Así pues, cada clínica se organiza de forma diferente, pero la misión, en su esencia, permanece igual, esto es, brindar los servicios

a personas empobrecidas, según cualificadas por las guías federales, mientras sirven de oportunidad práctica y pedagógica para el estudiantado de las Escuelas de Derecho.

Ahora bien, el TPI razonó que a la OLC y al Proyecto DeCiudad no les aplica la exención bajo la Ley núm. 81 por no constar el sello de la Clínica de Asistencia Legal en los escritos ni haber comparecido un "estudiante-abogado"[20], ya que "el propósito es pedagógico".[21] A su vez, concluyó que a estas organizaciones tampoco le cobijaba la exención bajo la Ley núm. 122, por no considerar, como entidades análogas a la Corporación de Servicios Legales de Puerto Rico.

Surge del lenguaje claro de la Ley núm. 81 y, en lo aquí pertinente, que la exención es un derecho de las personas con capacidad económica limitada que reciben los servicios legales gratuitos a través de las clínicas.[22] Es decir, no es un privilegio ni un derecho *per se* de las clínicas de asistencia legal,[23] sino uno adscrito a **las personas en condiciones de empobrecimiento que reciben los servicios**.[24]

Asimismo, de la lectura íntegra de la referida ley se hace evidente que la Asamblea Legislativa no condicionó la exención a la participación de estudiantes como litigantes o comparecientes. Por el contrario, en su Artículo 4, el estatuto establece que los escritos judiciales o las solicitudes de documentos públicos deben **estar firmadas por un abogado de las clínicas de asistencia legal de las escuelas de Puerto Rico**, no por un estudiante. 4 LPRA sec. 303a, Inciso (d). Recordemos que el Tribunal Supremo ha reiterado

---

[20] Resolución del 26 de agosto de 2025, SUMAC TPI, Entrada núm. 42.
[21] *Íd.*
[22] El Artículo 1 de la Ley núm. 81 establece que "**las personas a quienes ellas** [las clínicas] **sirvan, quedan por la presente exentas del pago de toda clase de derechos, aranceles o impuestos** (. . .)". 4 LPRA sec. 303a, Inciso (a).
[23] La Ley núm. 81 exime del pago de aranceles a las Clínicas de las Escuelas de Derecho en lo pertinente al desempeño de (1) sus funciones y logro de sus objetivos o (2) lo necesario para el trámite de los casos o asuntos en el que representen a personas con condición económica limitada y recibiendo servicios legales gratuitos. *Íd.*
[24] Véase, el Artículo 2 de la Ley núm. 81, 4 LPRA sec. 303a, Inciso (b).

que el texto claro de la ley es **la intención legislativa**. En estos casos, **la letra no debe ser menospreciada bajo el pretexto de "cumplir con su espíritu"**. *Bco. Popular de PR v. Munc. de Aguadilla*, 144 DPR 651, 657 (1997) *Sist. Univ. Ana G. Méndez v. C.E.S. II*, 142 DPR 558 (1997).

A su vez, entendemos menester apuntalar que las Clínicas de Asistencia Legal de nuestras Escuelas de Derecho, con el fin de garantizar un servicio de calidad a sus clientes -atado al deber de competencia y diligencia- y en apoyo a los calendarios de los tribunales, continúan ofreciendo servicios durante varios meses del año, en los que no tienen estudiantes matriculados. Por lo que exigirles que comparezca siempre un estudiante, para poder otorgarle la exención al cliente y a las clínicas, sería oneroso y en contravención de los principios básicos del acceso a la justicia y de la resolución rápida y económica de las controversias.

Adicionalmente, el hecho de que un estudiante no comparezca en el escrito o no sea el litigante del caso, no significa que las clínicas están faltando a su deber inminentemente pedagógico. La práctica de la profesión de la abogacía no se limita a la litigación, y en estos casos, le corresponde de todos modos al profesorado establecer sí sus estudiantes están preparados para litigar o comparecer ante determinadas controversias. Así, un estudiante de la clínica puede obtener el componente práctico al participar en el proceso de entrevistas, de investigación y la elaboración de la teoría del caso, sin necesidad de comparecer o litigar ante el tribunal.

Por otro lado, en el caso ante nuestra consideración, desde la primera comparecencia de la parte peticionaria ante el foro de primera instancia, se acreditó que esta solicitó y fue cualificada como insolvente, y que está representada gratuitamente por las organizaciones antes mencionadas adscritas a la CAL de la Facultad de Derecho de la UIPR. En todos sus escritos, y como indicamos, se

señaló expresamente que "[s]e presenta libre de derechos, 4 LPRA sec. 303a (2021), por las partes comparecientes ser representadas por la Oficina Legal de la Comunidad, Inc., y la Clínica de Asistencia Legal de la Facultad de Derecho de la Universidad Interamericana de Puerto Rico".[25]

A su vez, no podemos obviar que el TPI reconoció como indigente y eximió del pago de aranceles a la señora Toledo Santana, precisamente, por encontrarse representada por la OLC y el Proyecto DeCiudad, organizaciones sin fines pecuniarios que trabajan en asociación con la Clínica de Asistencia Legal de la Facultad de Derecho de La Universidad Interamericana de Puerto Rico. Incluso, **mediante la *Orden* emitida el 9 de octubre de 2024, el TPI declaró *Ha Lugar* a la solicitud de eximir, también, del pago de los aranceles de la solicitud de regrabación y estableció procedía la exención "por ésta estar representada por la Oficina Legal de la Comunidad de la Facultad de Derecho de la UIPR**".[26] Esto, sin haber solicitado la certificación de la OLC emitida por el Secretario de Justicia, mediante la cual se acredita que esta es una organización análoga a la Corporación de Servicios Legales de Puerto Rico.

No podemos obviar que lo antedicho fue advertido por la señora Toledo Santana en la *Solicitud de Reconsideración,* instada ante el TPI, al señalar que "Cabe destacar que la Resolución interlocutoria del pasado 26 de agosto de 2025, conflige con el hecho de que la parte aquí compareciente fue eximida del pago de aranceles en su primera comparecencia en este caso, por estar representada por la Oficina Legal de la Comunidad. (**Entrada 7** en SUMAC)."[27]

---

[25] SUMAC TPI, Entrada núm. 7.
[26] SUMAC TPI, Entrada núm. 36.
[27] SUMAC TPI, Entrada núm. 46, a la pág. 3.

Como corolario de lo anterior, destacamos que el Tribunal Supremo en *Servicios Legales et al. v. Registradora*, por voz del Hon. Kolthoff Caraballo, estableció que **"[r]esulta un contrasentido que se reconozca la insolvencia para unos fines y se ignore para otros más fundamentales"**.[28] Por ello, entendemos que, una vez aceptada la indigencia a la peticionaria en los trámites procesales iniciales ante su atención, el TPI debió reconocer la insolvencia para efectos de la imposición de la fianza en apelación, a menos que entendiera que existía una controversia sobre la cualificación realizada por la organización. Lo cual no surge de ninguna de las instancias procesales del SUMAC. Más aún, es menester reiterar que en el ordenamiento jurídico se ha decretado que la evaluación de las cualificaciones del cliente para recibir la asistencia legal gratuita **le compete de manera exclusiva a la entidad que presta los servicios a personas de capacidad económica limitada**. *Feliciano v. Tribunal Superior*, supra, a la pág. 508; *Servicios Legales et al. v. Registradora,* supra, a las págs. 409-410.

De otro lado, sobre la determinación de que las corporaciones OLC y Proyecto DeCiudad no son consideradas como entidades análogas, según la Ley núm. 122 debemos diferir categóricamente del raciocinio del foro primario. Ello, por las razones que en adelante expondremos.

Apuntalamos que el mandato del Tribunal Supremo es a los fines de que el TPI corroborara que, en efecto, la OLC y el Proyecto DeCiudad como parte de la CAL de la Facultad de Derecho de la Universidad Interamericana de Puerto Rico, están cobijadas por la exención de la Ley núm. 81 o solicitarles documentos que acreditaran que se encuentran certificadas por el Secretario de

---

[28] *Servicios Legales et al. v. Registradora*, 211 DPR 393, 417 (2023), citando a *Bucaré Management v. Arriaga García*, 125 DPR 153, 158-159, (1990). Énfasis nuestro.

Justicia como una entidad análoga, según lo establece la Ley núm. 122.

Como previamente explicamos, la Asamblea Legislativa, mediante la Ley núm. 122 **le otorgó exclusivamente al Secretario de Justicia la encomienda de certificar las entidades análogas exentas bajo esta norma.** Conforme a ello, el foro primario incidió al no solicitar la documentación requerida para corroborar el estado actual de estas organizaciones y la certificación de la OLC emitida por el Secretario de Justicia, mediante la cual se acredita que esta es una organización análoga a la Corporación de Servicios Legales de Puerto Rico.

Al respecto, surge de la *Solicitud de Reconsideración* y el Anejo 2, que estas organizaciones están cobijadas por las exenciones otorgadas bajo la Ley núm. 81 y la Ley núm. 122.[29] Mediante la *Certificación* emitida el 8 de febrero de 2016, por el entonces Secretario de Justicia, el funcionario claramente afirmó que "… la Oficina Legal de la Comunidad, Inc. constituye una organización sin fines de lucro dedicada a ofrecer servicios legales gratuitos, cuyas funciones y propósitos son similares a los de la Corporación de Servicios legales de Puerto Rico, por lo que le son de aplicación las exenciones establecidas en el Artículo 1 de la Ley Núm. 122 de 9 de junio de 1967, según enmendada." Por tanto, el TPI falló en considerar este documento para cumplir con el mandato del Tribunal Supremo.

Además, en el Anejo 3 del pedido se incluyó el convenio intitulado *Contrato de Otorgación de Fondos de Acceso a la Justicia* suscrito entre la Fundación Fondo de Acceso a la Justicia y la Facultad de Derecho de la UIPR y la OLC. En el convenio se especificó que el propósito del Proyecto DeCiudad es "Ofrecer

---

[29] SUMAC TPI, Entrada núm. 46.

servicios legales gratuitos en casos de naturaleza civil a personas que no cuentan con recursos económicos, vindicar el derecho a la vivienda y promover el desarrollo sostenible de comunidades de escasos recursos, mientras se continua el Programa Clínico." Además, y lo que nos concierne, en el contrato se estableció que uno de los objetivos del programa es "Asesorar y/o proveer representación legal a individuos de escasos recursos, que no son dueños de vivienda, en procesos administrativos y judiciales de desahucio y desalojo."

También en la referida *Solicitud de Reconsideración* se explicó que el Proyecto DeCiudad, **no tiene personalidad jurídica alguna**, y fue "desarrollado conjuntamente por la OLC y la Clínica de Asistencia Legal, dirigido a atender asuntos relacionados con el desarrollo económico comunitario, desplazamiento poblacional, derecho a la vivienda, y el derecho humano a la ciudad en general." Por lo que, mediante este se brindan servicios legales gratuitos en casos civiles a personas de escasos recursos con el fin de vindicar el derecho a la vivienda, como sucede en el caso que nos ocupa.

Por último, respecto al fundamento expresado por el foro recurrido, de que al menos en una (1) ocasión, la OLC junto al Proyecto DeCiudad de la CAL representaron a una corporación, se hace indispensable apuntalar que, en el caso que nos ocupa, estas entidades representan a una persona natural, cualificada como indigente y a quien le están prestando servicios legales gratuitos. Lo que fue reconocido y aceptado diáfanamente por el TPI durante el pleito, conforme explicamos.

Recordemos que la Ley núm. 122 dispone que estas corporaciones estarán exentas "en todo lo que fuere pertinente al desempeño de sus funciones y logros de sus objetivos **o cuando sea necesario para el trámite de los casos o asuntos en que**

**estuvieren interviniendo a beneficio de las personas a quienes están prestando Servicios Legales gratuitos**".[30]

En conclusión, erró el TPI al determinar que la OLC y el Proyecto DeCiudad de la CAL no se encuentran cobijadas por las exenciones al amparo de la Ley núm. 81 y la Ley núm. 122. Asimismo, el foro primario erró al dictaminar que era necesario llevar a cabo una *Vista de Indigencia* cuando, desde la primera comparecencia, procedió a eximir a la señora Toledo Santana del pago de aranceles por razón de ser insolvente a través de la cualificación realizada por dichas entidades para los fines **de todos los trámites judiciales del pleito ante su consideración**. Lo que, sin lugar a duda, incluye eximirla de prestar la fianza en apelación como explicamos *in extenso*.

## IV.

Por los fundamentos antes expuestos, expedimos el auto de *certiorari* solicitado y revocamos la *Resolución* recurrida. En consecuencia, dejamos sin efecto la paralización de los procedimientos y devolvemos al TPI para que proceda conforme a lo aquí resuelto.

Notifíquese inmediatamente.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

---

[30] 32 LPRA sec. 1500.