Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL
OAJP-2021-086

| | | |
|---|---|---|
| KRISTAL RAMOS ENCARNACIÓN, EUGENIO J. RAMOS CALDERÓN, ERIKA ENCARNACIÓN SÁNCHEZ<br><br>Peticionarios<br><br>v.<br><br>ALMA CONSTRUCTION CORP., NEUROLOGY SOLUTIONS AND TECH SERVICES INC., ASEGURADORAS A, B Y C, Y OTROS<br><br>Recurridos | TA2025CE00733 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso núm.: CA2022CV02068 (407)<br><br>Sobre: Impericia Profesional Contra Otros Profesionales (No Médicos) |

Panel integrado por su presidenta la jueza Ortiz Flores, el juez Rivera Torres y el juez Campos Pérez

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 18 de noviembre de 2025.

Comparece ante este tribunal apelativo, Kristal Ramos Encarnación, Eugenio J. Ramos Calderón y Erika Encarnación Sánchez (en conjunto, los peticionarios), mediante el recurso de *certiorari* de epígrafe solicitándonos que revisemos la *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI), el 12 de septiembre de 2025, notificada el mismo día. Mediante este dictamen, el foro primario no permitió la presentación del *Informe de Gastos y Pérdidas Económicas* anunciado por los peticionarios.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* solicitado y revocamos la determinación recurrida.

**I.**

El 2 de junio de 2022, los peticionarios instaron una demanda sobre daños y perjuicios en contra de Alma Construction Corp. (ACC), Hospital UPR Federico Trilla (Hospital UPR), y Neurology Solutions and Tech Services Inc. (Neurology), entre otros demandados, (en conjunto, los recurridos).[1] En esencia, se alegó que Kristal Ramos Encarnación (Kristal) es Terapista Respiratorio y Especialista en Trastorno del Sueño y que, el 4 de octubre de 2020, firmó un contrato con Neurology para brindar sus servicios como Técnica del Sueño en la Clínica American Sleep Center (ASC), ubicada en el primer piso del Hospital UPR en el pueblo de Carolina.

Se indicó que la ASC solicitó al Hospital UPR construir habitáculos adicionales para lo que se contrató a ACC, quien comenzó la obra el 21 de julio de 2021. Mientras se construía el proyecto en las instalaciones de la ASC, Kristal tuvo que presentarse a trabajar y, por razón de la exposición al polvo resultante de la construcción, comenzó a sentirse asfixiada, por lo que le colocaron una cánula nasal y se conectó a un tanque de oxígeno.

Se agregó que el 7 de agosto del 2021, finalizado el turno de trabajo, Kristal fue a la Sala de Emergencias del Hospital UPR en donde la asistieron y la hospitalizaron. Allí, los médicos le informaron que la exposición que esta tuvo con el polvo del *gypsum board* fue tanta que le provocó una obstrucción crónica desde tráquea hasta los alveolos. Por lo que, su sistema respiratorio estaba tan afectado que no se observaba mejoría, a pesar de la cantidad de medicamentos y tratamientos que le estuvieron administrando. Asimismo, se mencionó que en el hospital se contagió con el Micoplasma, lo que complicó aún más su recuperación.

---

[1] Véase, el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), Entrada núm. 1.

Se adujo también que los medicamentos que le administraron, durante la hospitalización, le descontrolaron el azúcar y la presión arterial, por lo que comenzaron a aplicarle insulina intramuscular varias veces al día y medicamentos para controlarle la presión. Se añadió que, durante la hospitalización, Kristal comenzó a aumentar drásticamente de peso a causa de la acumulación de líquidos y desarrolló un brote de acné en todo su cuerpo, efectos que continuaron mucho tiempo después de haber culminado de utilizar el medicamento Prednisona. Se arguyó que esta sufrió de depresión a causa del medicamento utilizado y su cabello se comenzó a caer, lo cual le llevó a cortárselo.

Como consecuencia de las acciones negligentes imputadas a los recurridos, Kristal no puede estar mucho tiempo de pie y su vida laboral y cotidiana se ha visto seriamente afectada. **Asimismo, se arguyó que, a causa de la deficiencia pulmonar, esta ha estado sin trabajar desde el 7 de agosto del 2021 hasta la actualidad.**

Así pues, se especificó que los daños físicos de esta ascienden a una suma no menor $100,000; así como una cuantía de $50,000 por las severas angustias mentales y sufrimientos morales. **A su vez, se peticionó una partida de $20,000 para Kristal por no haber podido trabajar, ni generar ingresos a raíz de la condición pulmonar padecida**.

Además, solicitaron $50,000 para cada uno de sus padres, Sr. Eugenio J. Ramos Calderón y la Sra. Erika Encarnacion Sánchez, por su severas angustias mentales y sufrimientos morales. Se reclamó la solidaridad en el pago de las cantidades peticionadas por los daños reclamados a los recurridos, a su personal y a sus aseguradoras.

La demanda fue enmendada en cuatro (4) ocasiones adicionales y en todas estas se incluyeron alegaciones similares

relacionadas a la pérdida de ingresos de Kristal (SUMAC TPI, Entradas núms. 4, 29, 41 y 83).[2]

Luego de múltiples trámites procesales, innecesarios detallar[3], y en lo que nos concierne, el 24 de julio de 2025 las partes presentaron el *Informe preliminar entre abogados*.[4] En el acápite titulado *IX. Peritos de las partes y Resumen de sus Testimonios*, los peticionarios, como demandantes, indicaron que se proponían presentar como prueba pericial a:

...

> 2-CPA Sr. Stephen López Torres, testificará sobre sus cualificaciones como perito y sobre su informe relacionado a las pérdidas de ingreso de la demandante Kristal Ramos Encarnación.

El 31 de julio, el foro revisado celebró la *Conferencia con Antelación a Juicio y Vista Transaccional* a la que asistieron las partes y sus representaciones legales.[5] De la *Minuta* surge que se discutió el *Informe preliminar entre abogados* y se señaló *Conferencia con Antelación al Juicio* para el 7 de noviembre de 2025, a las 9:00 a.m., de manera presencial. Asimismo, surge que el TPI instruyó que se presentara un informe enmendado para lo siguiente: contener el análisis de la valoración conforme al caso *Fresenius*; las partes deben evaluar si pueden hacer más estipulaciones de hechos; **incluir las objeciones a la prueba documental**; informar los folios de los documentos y fechas específicas; y **verificar si deben enmendar el resumen del testimonio de los testigos**.

El 1 de agosto de 2025, el foro primario emitió la *Orden de Calendarización* en la que instruyó a las partes al fiel cumplimiento

---

[2] Destacamos que de la lectura de las demandas enmendadas surge que se añadieron, entre otros demandados, a la Universidad de Puerto Rico, a la Corporación de Servicios Médicos Universitarios, Inc., a Mapfre Praico Insurance Company y a Multinational Insurance Company. Además, constatamos que en estas se incluyeron las alegaciones de pérdida de ingresos de Kristal.

[3] Se hace importante señalar que el TPI ha dictado varias Sentencias Parciales desestimando la acción o mediante desistimiento de los peticionarios. Por lo que varios de los demandados ya no forman parte del pleito.

[4] Sistema Unificado de Manejo y Administración de Casos del TPI (SUMAC), Entrada núm. 150.

[5] SUMAC TPI, Entrada núm. 154.

con la Regla 37.4 de las de Procedimiento Civil. A su vez, ordenó que se presente el *Informe de Conferencia con Antelación al Juicio* en o antes del 28 de octubre de 2025.

El 9 de septiembre, Neurology instó una *Moción Solicitando Remedio* en la que informó que, en ese día, se les notificó un informe de gastos y pérdidas económicas radicado por el abogado de los peticionarios.[6] Así, entienden que el mismo es tardío y sorpresivo, por lo que se le solicitó al TPI "que resuelva que el mismo es inadmisible a estas alturas del proceso." El foro recurrido concedió término a los peticionarios para que reaccionaran.

El 12 de septiembre de 2025, los peticionarios instaron ante el TPI una *Moción en Cumplimiento de Orden y Solicitando se Admita Informe Pericial de Gastos y Pérdidas Económicas de los Demandantes* en la que señalaron, entre otros argumentos, que:[7]

...

6- En primera instancia debemos destacar que desde la presentación de la Demanda [inicial] (SUMAC #1) hasta la presentación del Informe de Conferencia entre Abogados presentado en este Tribunal (SUMAC #150) **la parte demandante reclamó pérdidas en su ingreso y gastos por los hechos y negligencia alegadas**.

**7-En el Informe de Conferencia entre Abogados presentado en este Tribunal (SUMAC #150) se incluyó entre la prueba documental y pericial de los demandantes el informe de gastos y pérdidas económicas de los demandantes, que se pretende sea [excluido] por sorpresivo y [tardío].**

...

9-Entendemos que el Informe Pericial recién notificado a las partes demandad[a]s, fue anunciado a las partes desde que se presentó el Informe de Conferencia entre Abogados y era conocido por dichas partes de que dicho informe estaba presto a notificarse y que estaba condicionado al pago del mismo por parte de los demandantes; por eso su pequeño retraso.

10-Revisando la Minuta de la última vista celebrada el pasado 31 de julio de 2025 (SUMAC # 154) destacamos que lo primero que se discutió en la vista fue el ofrecimiento [transaccional] a los demandados, la cual se basa y se fundamenta en la partida de pérdida

---

[6] SUMAC TPI, Entrada núm. 158.
[7] SUMAC TPI, Entrada núm. 160. Énfasis en el original y nuestro.

de ingresos y gastos de la [demandante], junto a los daños físicos y emocionales [sufridos] por ellos.

...

13-La parte aquí compareciente, a raíz de la moción radicada por el demandado NEUROLOGY, [entiende] que este Tribunal debe admitir el Informe Pericial notificado recientemente, **pero anunciado hace meses en el Informe de Conferencia entre Abogados**. Entendemos que se le debe permitir a las partes demandad[a]s la oportunidad de poder reaccionar al contenido del mismo y concederle un término para presentar prueba que rebata la anunciada por los demandantes.

Así las cosas, el 12 de septiembre de 2025, notificada el mismo día, el foro *a quo* emitió la *Orden* recurrida en la que expresó que "La Orden de calendarización del 1 de agosto no dispone sobre el descubrimiento de prueba porque ya este terminó. Véase Orden de calendarización del 28 de febrero de 2025. Entrada 145 en SUMAC. Véase Reglas 37 de Procedimiento Civil *in extenso*. Por tanto, se declara No ha lugar la moción presentada por la parte demandante. No se va a permitir el informe."[8]

El 17 de septiembre, los peticionarios presentaron una moción de reconsideración en la que reafirmaron varios de los argumentos expuestos en la *Moción en Cumplimiento de Orden y ...* instada el 12 de septiembre. (SUMAC TPI, Entrada núm. 160).[9] Asimismo, arguyeron que:

...

7-Las partes demandantes hicieron un gran esfuerzo económico para poder pagar dicho informe pericial y su dilación en obtenerlo NO debe recibir la mayor de las sanciones, el cual consiste en su eliminación. **Los demandantes estarían dispuestos a que se les aplique la sanción económica mencionada en su última Minuta. (SUMAC #154)**

8-Resulta en extremo curioso que **NI EL DEMANDADO NEUROLOGY, NI LAS UNA SOLA DE LAS DEMAS PARTES CODEMANDADAS**, haya reclamado **PERJUICIO, DAÑO, O MENOSCABO ALGUNO** por razón de la demora en presentarse el informe pericial del perito de la parte demandante, a pesar de que se anunciara desde el Informe de Conferencia entre Abogados discutido en la última vista. (SUMAC # 150).

---

[8] SUMAC TPI, Entrada núm. 161.
[9] SUMAC TPI, Entrada núm. 162. Énfasis en el original.

...

21-Entendemos que la parte aquí compareciente ha sido diligente en la tramitación del descubrimiento de prueba y por ello entendemos que existe justa causa para que este Tribunal considere la admisión del Informe de pérdida de ingresos y gastos de los demandantes por lo esbozado en este escrito, ya que el mismo estaba anunciado en el Informe de Conferencia entre Abogados, (SUMAC #150) y reconsidere su última órden no permitiendo su presentación.

**22-Finalmente, reconocemos que este Tribunal tiene la facultad de sancionar económicamente a esta parte a tenor con la Regla 37.7 de las de Procedimiento Civil vigentes, si entiende que se incumplieron los términos del descubrimiento de prueba.**

El 13 de octubre, el TPI denegó el antedicho petitorio.[10] En el dictamen, notificado al día siguiente, el foro recurrido razonó que:

Vistos los múltiples escritos y a tenor con la normativa aplicable, se declara No Ha Lugar la solicitud de reconsideración de la parte demandante. Contrario lo alegado por los demandantes, el descubrimiento ya había terminado el 28 de abril. Véase Entrada 145 en SUMAC. Lo anterior se dictamina tomando en cuenta la fecha en que inició el caso de autos y el momento en que se hace el petitorio. Mayor aún, tal como sostienen los codemandados, los demandantes no han presentado la justa causa para la presentación posterior de terminado el descubrimiento de prueba el 28 de abril.

Todavía inconforme, la peticionaria acudió ante este tribunal intermedio imputándole al tribunal primario haber incurrido en el siguiente error:

ERRÓ EL TPI DE CAROLINA AL NO ADMITIR UN INFORME PERICIAL POR PARTE DE LOS DEMANDANTES-PETICIONARIOS ADUCIENDO QUE LOS AQUÍ COMPARECIENTES NO ADUJERON JUSTA CAUSA PARA SU PRESENTACIÓN LUEGO DEL TÉRMINO CONCEDIDO PARA LA CULMINACIÓN DEL DESCUBRIMIENTO DE PRUEBA Y LUEGO DE CELEBRADA LA PRIMERA CONFERENCIA CON ANTELACIÓN AL JUICIO, A PESAR DE ESTAR ALEGADOS EN LA DEMANDA ORIGINAL, SUS ENMIENDAS E INCLUÍDO EN EL INFORME DE CONFERENCIA ENTRE ABOGADOS CONSIDERADO EN LA VISTA DEL PASADO 31 DE JULIO DE 2025.

El 7 de noviembre de 2025, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 17 siguiente para

---

[10] SUMAC TPI, Entrada núm. 166.

expresarse. El 14 y 15 de noviembre, respectivamente, ACC y Neurology cumplieron con lo ordenado. Así, nos damos por cumplidos y; a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**Auto de *Certiorari***

El recurso de *certiorari* es el vehículo procesal discrecional disponible para que un tribunal apelativo revise las resoluciones y órdenes interlocutorias de un tribunal de inferior jerarquía. Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1; *García v. Padró,* 165 DPR 324, 334 (2005). Todo recurso de *certiorari* presentado ante este foro apelativo deberá ser examinado primeramente al palio de la Regla 52.1 de las de Procedimiento Civil, *supra.* Dicha regla limita la autoridad y el alcance de la facultad revisora de este foro apelativo sobre órdenes y resoluciones dictadas por el foro de primera instancia, revisables mediante el recurso de *certiorari.* La referida norma dispone como sigue:

> Todo procedimiento de apelación, certiorari, certificación, y cualquier otro procedimiento para revisar sentencias y resoluciones se tramitará de acuerdo con la ley aplicable, estas reglas y las reglas que adopte el Tribunal Supremo de Puerto Rico.
>
> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, **solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo.** No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando **se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia**. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 de este apéndice sobre los errores no perjudiciales. Regla 52.1 de Procedimiento Civil, *supra*. [Énfasis Nuestro].

Por tanto, el asunto que se nos plantea en el recurso de *certiorari* deberá tener cabida bajo alguna de las materias reconocidas en la Regla 52.1 de las de Procedimiento Civil, *supra*. Ello, debido a que el mandato de la mencionada regla dispone expresamente que solamente será expedido el auto de *certiorari* para la revisión de remedios provisionales, interdictos, denegatoria de una moción de carácter dispositivo, admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia y en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

Así, pues, para determinar si debemos expedir un auto de *certiorari* debemos determinar primeramente si el asunto que se trae ante nuestra consideración versa sobre alguna de las materias especificadas en la Regla 52.1 de las de Procedimiento Civil, *supra*. Sin embargo, aun cuando el asunto esté contemplado por dicha regla, para determinar si procede la expedición de un recurso y poder ejercer sabiamente nuestra facultad discrecional, debemos acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62-63, 215 DPR __ (2025), dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Estos criterios sirven de guía para poder determinar, de manera sabia y prudente, si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra el caso. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). Es decir, que el examen que emplea el foro apelativo no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG*, 205 DPR 163, 176 (2020).

De otra parte, el ejercicio de las facultades del Tribunal de Primera Instancia merece nuestra deferencia, por tanto, solo intervendremos con el ejercicio de dicha discreción en aquellas instancias que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción; o (3) se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo. *BBPR v. SLG Gómez-López*, 213 DPR 314, 334-335 (2023); *Ramos v. Wal-Mart*, 165 DPR 510, 523 (2006); *Rivera Durán v. Banco Popular de Puerto Rico*, 152 DPR 140,155 (2000).

### III.

En esencia, los peticionaros plantearon que erró el TPI al no admitir el *Informe Pericial de Gastos y Pérdidas Económicas de los Demandantes,* anunciado por estos,  al razonar que no se adujo justa causa para su presentación, luego del término concedido para la culminación del descubrimiento de prueba y posterior de

celebrada la primera *Conferencia con Antelación al Juicio*. Agregaron que, incidió el foro primario al fallar en considerar que estos daños fueron alegados en la demanda original, sus enmiendas e incluidos en el *Informe preliminar entre abogados* discutido en la vista del 31 de julio de 2025.

De entrada, advertimos que la controversia planteada está incluida en las instancias que esta *Curia* puede atender al palio de la Regla 52.1 de las de Procedimiento Civil, *supra*. A su vez, están presentes algunos de los criterios enunciados en nuestra Regla 40, antes citada, por lo que, determinamos expedir el recurso solicitado, en especial, por ser el momento más propicio para atenderlo, y así, evitar un fracaso irremediable de la justicia.

Del trámite procesal previamente detallado, surge que el 24 de julio de 2025 las partes presentaron el *Informe preliminar entre abogados*. Como señalamos, en el acápite titulado *IX. Peritos de las partes y Resumen de sus Testimonios,* los peticionarios anunciaron como prueba pericial, en lo concerniente, al CPA Sr. Stephen López Torres quien declararía sobre su informe relacionado a las pérdidas de ingreso de Kristal.

Por su parte, de la *Minuta* de la *Conferencia con Antelación a Juicio y Vista Transaccional* llevada a cabo el 31 de julio posterior, surge que **se discutió el referido *Informe preliminar entre abogados*.** Asimismo, surge que el foro recurrido ordenó que las partes presentaran un informe enmendado para, entre otros asuntos, **incluir el análisis de la valoración** conforme al caso *Fresenius*; **evaluar si pueden hacer más estipulaciones de hecho**; **incluir las objeciones a la prueba documental**; y **verificar si deben enmendar el resumen del testimonio de los testigos**.

Por tanto, de lo ocurrido en dicha vista no encontramos que los recurridos hayan impugnado la inclusión del CPA Sr. Stephen López Torres, como perito de los peticionarios, para testificar sobre

el informe que se prepararía relativo a las pérdidas de ingreso de Kristal.

Además, como bien señalaron los peticionarios, en varios escritos ante el TPI, y en el recurso ante nuestra consideración, el *Informe Pericial de Gastos y Pérdidas Económicas de los Demandantes* se presentó para sustentar las partidas que fueron reclamadas desde la demanda inicial y las enmendadas; así como en el *Informe preliminar entre abogados* el que, como vimos, fue objeto de discusión en la *Conferencia con Antelación a Juicio y Vista Transaccional.* Por tanto, no cabe duda de que los recurridos estaban notificados adecuadamente, desde el inicio del caso, de las partidas reclamadas por Kristal relativas a la pérdida de ingresos.

Por otra parte, en el escrito presentado por Neurology, el 9 de septiembre, intitulado *Moción Solicitando Remedio* en el que le informó al tribunal que se le notificó el referido informe pericial sobre gastos y pérdidas, solo se arguyó, de manera general y escueta, que entienden que el mismo es tardío y sorpresivo. Por lo que le solicitó al TPI "que resuelva que el mismo es inadmisible a estas alturas del proceso".

Así pues, notamos que Neurology no adujo claramente si la presentación del antedicho informe le causaba perjuicio o dilataba innecesariamente los procedimientos. Más aún, en el escrito señaló que "[e]n la eventualidad de que el Tribunal entienda que procede, nos conceda tiempo a ambas partes demandadas para reaccionar al mismo por lo que debe ser cancelada la reunión del día 11 antes mencionada y solicitamos un t[é]rmino de no menos de 20 días para informar la identidad del perito a utilizar y el término de 60 días para presentar nuestro informe". En este sentido, resulta forzoso colegir que Neurology no entiende que este proceder le hace incurrir en gastos adicionales, ni que permitir el informe le impida tener una

representación adecuada o que lo ponga en un estado de indefensión.

Recordemos que la *discreción judicial* se define como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. De este modo, el ejercicio de este discernimiento se encuentra estrechamente relacionado con el concepto *razonabilidad*. Así pues, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho.

Por su parte, como bien se dispone en el ordenamiento jurídico, en todos los casos contenciosos se celebrará una reunión entre los abogados de las partes para preparar el *Informe para el Manejo del Caso*, el cual contendrá, entre otros asuntos, "un plan itinerario de todo descubrimiento de prueba que [las partes] se propongan realizar, incluyendo las fechas para su cumplimiento". Regla 37.1 (f) de las de Procedimiento Civil, 32 LPRA Ap. V, R. 37.1 (f). Una vez preparado el *Informe para el Manejo del Caso*, el tribunal señalará una conferencia inicial en la cual considerará, entre otros asuntos, "[l]os límites, el alcance y el término final para concluir el descubrimiento de prueba pendiente". Regla 37.2 (g) de las de Procedimiento Civil, 32 LPRA Ap. V, R. 37.2 (g). Luego**, el tribunal emitirá una orden para la calendarización del proceso, conforme lo convenido en la conferencia inicial**. Regla 37.3 (a) de las de Procedimiento Civil, 32 LPRA Ap. V, R. 37.3 (a).

Establece la antedicha norma que **los términos y los señalamientos fijados en la orden de calendarización, serán de estricto cumplimiento, y estarán sujetos a la sanción establecida en la Regla 37.7 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 37.3 (c).**

La Regla 37.7 de las de Procedimiento Civil, *supra*, dispone que:

> Si una parte o su abogado o abogada incumple con los términos y señalamientos de esta Regla, o incumple cualquier orden del tribunal para el manejo del caso sin que medie justa causa, el tribunal impondrá a la parte o su abogado o abogada la sanción económica que corresponda.

Al analizar esta disposición, el Tribunal Supremo en *Rivera Gomez v. Arcos Dorados Puerto Rico, Inc.*, 212 DPR 194, 205 (2023), dictaminó que:

> De acuerdo con este lenguaje, "[e]l juez sólo tiene discreción para considerar si las razones que brinda la parte o el abogado que incumplió son suficientes para justificar la no imposición de la sanción económica". Hernández Colón, *op. cit.*, pág. 387. **Claro está, nada impide que posteriormente se impongan sanciones más drásticas, luego de que se aperciba a la parte sobre las consecuencias del incumplimiento y se le conceda un tiempo razonable para corregir la situación.** Véase J.A. Cuevas Segarra, *Tratado de derecho procesal civil*, 2.a ed., Estados Unidos, Publicaciones JTS, 2011, T. III, págs. 1118–1119. (Énfasis en el original)

Asimismo, y en lo que nos concierne, el más alto foro decretó que, toda vez que la Regla 37.7 de Procedimiento Civil, *supra,* establece la sanción económica como el disuasivo principal por el incumplimiento, la medida extrema de la desestimación o eliminación de la prueba pericial únicamente debe usarse en circunstancias excepcionales. *Rivera Gómez v. Arcos Dorados*, supra, a las págs. 206-207.

A base de la normativa previamente reseñada, entendemos que el foro recurrido incurrió en un abuso de discreción en su proceder. Esto, debido a que, aun cuando reconocemos que los tribunales de primera instancia tienen amplia discreción para regular el ámbito del descubrimiento, pues es su obligación garantizar una solución justa, rápida y económica del caso, sin ventajas para ninguna de las partes, resulta forzoso colegir que el foro *a quo* debió considerar primeramente la imposición de sanciones menos severas, previo a imponer la medida más drástica de impedir la presentación del *Informe Pericial de Gastos y Pérdidas Económicas de los Demandantes*.

Como bien advirtió el Tribunal Supremo, "[p]recisamente, para evitar dilaciones innecesarias en el manejo de un caso, la Regla 37.7 de Procedimiento Civil de 2009, *supra*, provee para la imposición de sanciones económicas por el incumplimiento injustificado con las órdenes y los señalamientos del tribunal. Desde luego, nada impide que los tribunales impongan sanciones más severas luego de que la **parte sea debidamente apercibida de la situación y de las consecuencias que acarrearía un incumplimiento subsiguiente**. Por lo tanto, como primera alternativa en este caso, el foro primario debió examinar si las razones expuestas por la representación legal de los peticionarios eran suficientes para justificar que no se impusiera una sanción económica". *Rivera Gómez v. Arcos Dorados*, supra, a la pág. 214. (Énfasis nuestro).

Reiteramos que no surge del expediente apelativo que los recurridos hayan argumentado que, autorizar la presentación del informe pericial que nos ocupa, en esta etapa de los procedimientos, implica una dilación en el trámite judicial. En este particular, insistimos que Neurology en el primer escrito presentado ante el TPI, una vez recibido el documento, indicó que, si el tribunal lo autorizaba, le concediera término a ambos recurridos para "reaccionar al mismo" y peticionó "un t[é]rmino de no menos de 20 días para informar la identidad del perito a utilizar y el t[é]rmino de 60 días para presentar nuestro informe". Por ello, subrayamos otra vez que no vemos que permitir el informe pericial conlleve una carga adicional, ni menos que ello resulte en un perjuicio para su defensa.

Asimismo, en la *Moción en Cumplimiento de Orden y Solicitando se Admita Informe Pericial de Gastos y Pérdidas Económicas de los Demandantes*, se especificó, entre otros planteamientos, que desde que se instó la demanda inicial hasta la presentación del *Informe preliminar entre abogados* esta, como **parte**

**demandante, reclamó pérdidas en su ingreso y gastos por los hechos y negligencia alegadas**. En el referido informe preliminar **se anunció, como parte de la prueba documental y pericial de la demandante, el informe pericial de gastos y pérdidas económicas. De hecho, también surge que la realización de dicho informe pericial estaba condicionado al pago del mismo por parte de los peticionarios**, **por eso su pequeño retraso**.

Por otro lado, en la vista celebrada el 31 de julio de 2025 se discutió el ofrecimiento transaccional cursado a los recurridos, el cual se basa y se fundamenta en la partida de pérdida de ingresos y gastos de Kristal, junto a los daños físicos y emocionales [sufridos] por ellos. Por ende, y como bien dictó el Tribunal Supremo en *Rivera Gómez v. Arcos Dorados*, supra, el TPI "debió examinar si las razones expuestas por la representación legal de los peticionarios eran suficientes para justificar que no se impusiera una sanción económica". Lo que constituye un análisis primario no realizado por el tribunal en la *Orden* recurrida, ni en el dictamen resolviendo la reconsideración instada por los peticionarios. Recordemos que **el TPI en la *Orden de Calendarización* del 28 de febrero de 2025 expresó que cualquier incumplimiento estaría sujeto a sanciones. No obstante, recalcamos que no encontramos una evaluación del TPI sobre si procedían o no las sanciones previo a la medida drástica de no permitir la presentación del informe pericial.**

Enfatizamos, además, que dichos argumentos de los peticionarios no fueron refutados por los recurridos ante el TPI ni ante este foro apelativo.

De otra parte, no podemos obviar que en la nueva *Orden de Calendarización* emitida el **1 de agosto de 2025**, aun cuando el foro primario ordenó a las partes el fiel cumplimiento con la Regla 37.4 de las de Procedimiento Civil, **no surge de esta una instrucción**

**clara referente a la prueba pericial**. Esto máxime cuando el 24 de julio anterior, es decir, siete (7) días antes, se presentó el *Informe preliminar entre abogados*, el que como hemos señalado, **incluía la utilización de un perito para testificar sobre su <u>informe relativo a la pérdida de ingresos de Kristal el que fue discutido en la Conferencia con Antelación al Juicio</u>**. Por ende, no nos convence la expresión del TPI, respecto a que en dicha *Orden de Calendarización* no tenía que disponer algún asunto sobre el descubrimiento de prueba, porque ya este terminó.

Asimismo, en dicho dictamen se ordenó que se presente un nuevo *Informe de Conferencia con Antelación al Juicio* en o antes del 28 de octubre de 2025. No obstante, el informe pericial en disputa fue anunciado a los recurridos el 9 de septiembre.

Sobre lo previamente expuesto, debemos apuntalar nuevamente que, al recibir el *Informe preliminar entre abogados* el 24 de julio de 2025, los recurridos no impugnaron la utilización del perito ni el informe pericial que este confeccionaría, aun cuando ahora nos invitan a prohibir su presentación debido a que en la anterior *Orden de calendarización* emitida el **28 de febrero de 2025**, notificada el 7 de marzo siguiente, el foro primario dictó que el **28 de abril de 2025** se determinó como la fecha de la finalización del descubrimiento de prueba. Sin embargo, se hace menester acentuar que, a esa fecha, todavía no se había presentado el *Informe preliminar entre abogados y abogadas,* ni se había celebrado la *Conferencia con Antelación al Juicio.*

Tampoco ignoremos que, como explicamos, en la *Conferencia con Antelación a Juicio y Vista Transaccional,* celebrada el 31 de julio, el foro discutió el *Informe preliminar entre abogados*. Como mencionamos, de la *Minuta* surge que el tribunal ordenó que las partes presentaran un *informe enmendado* para, entre otros asuntos, **incluir el análisis de la valoración conforme al caso**

*Fresenius*; **hacer más estipulaciones de hechos**; **incluir las objeciones a la prueba documental**; y **verificar si deben enmendar el resumen del testimonio de los testigos**.

Por otro lado, aunque no albergamos duda de que el foro primario intenta agilizar el trámite procesal del caso, es importante recalcar que la Regla 37.3 (c) de las de Procedimiento Civil, *supra*, preceptúa que los términos y los señalamientos fijados en la orden de calendarización, serán de estricto cumplimiento, y estarán sujetos a la sanción establecida en la Regla 37.7 del mismo cuerpo de reglas. **Como bien lo expresó el TPI en la *Orden de Calendarización* del 28 de febrero de 2025 según explicamos.**

Por último, como es sabido, el TPI tiene discreción para alterar los términos del manejo del caso. Esto, porque, aunque el *Informe preliminar entre abogados y abogadas* rige los procedimientos subsiguientes en todo caso civil, el mismo no es una camisa de fuerza que elimine la discreción del TPI para alterarlo, si así se evita una injusticia. *Berríos Falcón v. Torres Merced*, 175 DPR 962, 984 (2009). Esto, en especial, cuando el derecho a presentar prueba a favor de una reclamación constituye un pilar importante del debido proceso de ley. Por ello, la medida severa de excluir del juicio el testimonio de un perito esencial es análoga a la medida extrema de desestimación, por lo que solo debe implementarse en circunstancias excepcionales. De lo contrario, se socavarían los valores superiores de la búsqueda de la verdad, la política judicial de que los casos sean ventilados en los méritos y el derecho de toda parte de tener su día en corte. *Rivera Gómez v. Arcos Dorados*, supra, a la pág. 215.

En fin, resolvemos que el foro primario erró al no permitir la presentación de la prueba pericial de los peticionarios. Así, razonamos que este incurrió en un abuso de discreción, por lo que

esta *Curia* no está impedida de intervenir con la determinación objetada.

**IV.**

Por los fundamentos antes expuestos, expedimos el auto de *certiorari* solicitado y revocamos la *Orden* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones